## BEENE & TROTTER v. ROTAN GROCERY COMPANY.

### Decided April 29, 1908.

**Partnership—Fraud—Assumption of Debt.**

Evidence considered in an action on notes given in the name of a firm for the debt of a previous partnership, defendant having been induced by fraud to buy out one of the former partners and assume the debts, which contract he canceled after discovering the fraud, it being held that he was entitled to such rescission, and not estopped to claim such right against the payee of the notes, which were executed by the other partner without his authority, and that his

testimony, there being no effort made to contradict it, could not be disregarded, though it was that of an interested party.

Appeal from the County Court of McLennan County. Tried below before Hon. E. C. Street.

*Boyd & Boyd,* for appellants, cited: Heidenheimer Bros. v. Franklin, 1 White & W. C. C., sec. 840; Baptist Book Concern v. Carswell, 46 S. W., 858.

*Prendergast & Williamson,* for appellee, cited: Spann v. Cochran, 63 Texas, 240.

KEY, ASSOCIATE JUSTICE.—The Rotan Grocery Company brought this suit against G. A. Beene and W. M. Trotter and the firm of Beene & Trotter, seeking to recover upon two promissory notes executed by said firm. The defendant Trotter filed an answer embracing a general denial, a plea of *non est factum* and a special plea of fraud, which authorized proof of the facts hereinafter referred to. By that plea he made Earnest McGilvery a party, and prayed that in the event judgment was rendered against him, that he have judgment over against Beene and McGilvery for the same amount.

The plaintiff filed a supplemental petition denying all the allegations in Trotter's answer, and alleged that Trotter had bought the interest of McGilvery in the firm of Beene & McGilvery and had assumed payment of the debts of that firm, including an indebtedness to the plaintiff, and that thereafter, in consideration of an extension of time, the notes sued on had been executed for part of that indebtedness, and that the plaintiff had no knowledge or notice of the alleged fraud perpetrated upon Trotter by Beene and McGilvery, and praying in the alternative for judgment against Beene and McGilvery.

There was a trial before the court without a jury, which resulted in a judgment for the plaintiff against the firm of Beene & Trotter and G. A. Beene and W. M. Trotter individually, for $427.90, and judgment over in favor of Trotter against McGilvery for the same amount.

The defendant Trotter has appealed and presents the case in this court on two assignments of errors, both of which charge, in effect, that the judgment is not supported by and is contrary to the testimony. We sustain that contention and reverse the judgment. The defendant Trotter testified as follows:

"I am one of the defendants in this cause. I never saw the notes here sued on before now; I did not sign them nor authorize anyone to execute same for me. About the 15th of June, 1906, the firm of Beene & McGilvery were engaged in the family grocery business at Freestone, Texas, I had known Mr. Beene for about 26 years and McGilvery for about two years. I am and was then engaged in farming; McGilvery proposed to sell his one-half interest in the business to me; we talked the matter over and I saw Beene and talked with him in regard to the matter, and he stated that he thought there was good money in the business; I then decided I would trade; Beene and

McGilvery both told me that the outstanding indebtedness of the firm was about, and not exceeding, $500; we then took a partial inventory of the stock of goods on hand and all decided that it amounted to $1000, and acting upon the statement of Beene and McGilvery that the indebtedness did not amount to over $500 I took McGilvery's one-half interest, and agreed to assume his one-half the indebtedness of the old firm; I paid McGilvery $90 cash and agreed to pay Beene $150 for McGilvery, he having agreed to take $240 for his interest in the business and me assume his part of the debts of the old firm; we closed the trade and I took charge with Beene as his partner on June 20, 1906; we ran the business until the 12th of July, 1906, at which date the trade was canceled and rescinded with McGilvery, and the business turned over to Beene and McGilvery. The firm of Beene & Trotter created no debts; we only purchased one barrel of cider and paid for that.

"A few days after I had traded with McGilvery, statements of accounts and claims against the old firm began to come in, and I found that the indebtedness was largely more than $500, in fact it ran to more than $1800, and finding that the statements and representations of both Beene and McGilvery were false and fraudulently made, I decided that I would rescind the trade; I told Mr. Beene about it, and he made two trips to see McGilvery and McGilvery promised to come over and attend to the matter, but having failed to do so, I went over to see him and canceled the trade with him on July 12, 1906, and turned the whole business over to Beene and McGilvery; six or eight days after I made the trade, and after having received a statement from Rotan Grocery Company of their account against Beene & McGilvery, and finding it to be nearly $800, I saw Charley Clark, plaintiff's drummer, at Teague, Texas, and told him about the whole business and that I intended to rescind the trade with McGilvery, told him of the fraud that had been practiced on me, and he said that I ought not to pay the debts; this was before July 1, the date of the execution of the notes by Beene. Of course, I relied on the statements made by both Beene and McGilvery as to the debts not being over $500. I have never gotten back my $90 paid to McGilvery; he promised to give me his note for it, but has not done so.

"I had known Beene for about 26 years; he and McGilvery had been in business at Mexia before coming to Freestone; I gave Beene my trade while he was in business at Mexia; thought he was honest at the time I traded with McGilvery; had known McGilvery about two years and thought he was honest; when I traded with McGilvery I took the stock at $1000 and I agreed to assume one-half the indebtedness of the old firm, but my understanding was that it was not over $500; they had some books and I went over them but could not tell what they owed; we just took a partial inventory of the goods and agreed that there was $1000 worth, and the debts were represented to be about $500; so I paid McGilvery $90 cash and agreed to pay Beene $150, McGilvery agreeing to take $240 for his interest, and me assume his part of the debts; the books they had had not been kept up; I had never been in the mercantile business before I made this trade;

I had been farming in a few miles of where Beene & McGilvery were engaged in the mercantile business at that time; I had never had much to do with books and could not tell much about them; I did not get anyone else to examine the books for me to see how much Beene & McGilvery owed. In the trade I made with Beene & McGilvery, I simply bought out McGilvery's interest in the business and took his place in the firm. I got his half interest and took his place in assuming the debts of said firm; a few days after I had consummated this trade, I went into the store with Beene, and McGilvery went out. Beene was familiar with the business and was the manager; he was the managing partner after I went in. A few days after June 20, 1906, when I had consummated the trade, the Rotan Grocery Company sent in their claim, demanding payment; I then saw their claim was about $800. After I had seen this I told Beene to go ahead and pay out on this other claim all the money we had on hand and the proceeds of the sales as made. We then paid the Rotan Grocery Company about $100 in cash on their said claim. We also made payments to other creditors, some $500 or $600 in all; this was all done with my knowledge and consent and in accordance with my instructions. The Pace Grocery Company sent in their claim, which was about $700 or $800; I found out that they owed the First National Bank about $100 and some other little debts; I do not remember the names of any of the other creditors; I do not remember the exact time when I saw Charley Clark, the drummer of the Rotan Grocery Company. He was not at our place of business and was not offering to sell us any goods; I met him at Teague, which was several miles away from where our store was and where we did business; it was about ten days after I had closed the trade with Beene & McGilvery and had been in possession, that I saw Charley Clark, though I do not remember the exact time; I told him about the trade and what I had found out since, and he said he thought I would have no trouble in rescinding the trade with McGilvery; I did not know that he had authority only to sell goods for the Rotan Grocery Company. Beene wanted us to borrow the money to pay off all the debts but I declined to do that; I did not know that Beene gave the notes sued on until about six weeks after I canceled the trade. (The notes sued on were handed to the witness and examined by him.) These notes are signed with our firm name of 'Beene & Trotter,' and were signed by Mr. Beene, not me. I presume that they were given at the time they bear date; I did not cancel the trade with McGilvery until July 12, 1906; I presumed the debt of the Rotan Grocery Company, which was an open account when it was first presented to us for payment after I had bought out McGilvery, was past due or they would not have presented it and wanted it paid."

Neither Beene nor McGilvery was placed upon the stand, and no testimony was offered tending to controvert that given by Trotter. We think the latter's testimony shows that he was not liable upon the note sued on. His answer presented an equitable defense, entitling him to have his contract with Beene & McGilvery set aside and held for naught as between the original parties, and he is entitled to the

same relief against the plaintiff, unless he is estopped, or has waived such right. That no estoppel exists is manifest. The plaintiff's debt existed before Trotter bought out McGilvery. It is not shown that the extension of the time of payment of that debt will result in any injury to the plaintiff. If Trotter is not liable the original indebtedness exists against both Beene and McGilvery, and the plaintiff can procure judgment against them.

We also hold that the testimony fails to show that the appellant abandoned his right to plead the fraud perpetrated upon him by Beene and McGilvery. The fact that after ascertaining the existence of the fraud he directed Beene to apply the money on hand and proceeds of the stock of goods to the payment of the debts against the old firm, should not be construed as signifying anything more than that he was willing for the property acquired by him from McGilvery to be used for the payment of the debts of the old firm, and should not be held as authorizing Beene to execute obligations which would bind Trotter individually for such indebtedness; nor does such fact show an abandonment by Trotter of his right to plead the fraud referred to as against anyone seeking to hold him individually liable for the debts of Beene & McGilvery.

The only theory on which the judgment could be sustained would rest upon the proposition that, Trotter, being an interested party, the trial court was not compelled to give credence to his uncontradicted testimony. There are cases in which that rule has been applied, but we do not think that this case belongs to that class. Trotter's answer, filed months before the case was tried, apprised the plaintiff and Beene and McGilvery of the fact that Trotter charged the latter with perpetrating a fraud upon him. Both of the parties charged with committing the fraud were parties to the suit, and judgment was sought and obtained against McGilvery on account of the commission of that fraud. Notwithstanding these facts neither Beene nor McGilvery controverted the testimony given by Trotter; in fact, neither of them was placed upon the witness stand. This being the case, and nothing appearing to indicate that Trotter did not testify truthfully, we think it would be an abuse of discretion to disregard his testimony. Under these circumstances, Beene and McGilvery's silence tends strongly to corroborate Trotter.

It is also proper to say that we dispose of this case upon the theory that the plaintiff not only did not participate in the fraud, but had no notice of its existence until after the notes were executed. It was shown by the testimony of Mr. Patton, the plaintiff's cashier, that Charley Clark, the drummer referred to by Trotter, was not the plaintiff's representative in such capacity that notice to him would be notice to the plaintiff. We do not regard the question of notice or want of notice as of any importance, because in so far as appears from the record, Trotter's release from liability upon the notes will leave the plaintiff in exactly the same condition as it would have been in if the notes had not been executed and Trotter had not bought out McGilvery. This being the case, and Trotter's assumption of the payment of plaintiff's debt having been procured by fraud, he is entitled in equity to be released from such liability.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*