# SMITH v. INDUSTRIAL COMMISSION et al.

No. 6575.  Decided July 28, 1943.  (140 P. 2d 314.)

See 32 C. J. S., Evidence, sec. 1759; 28 R. C. L. 812 (8 Perm. Supp. 6239).

*Robert Murray Stewart*, of Salt Lake City, for plaintiff.

*Grover A. Giles*, Atty. Gen., and *Arthur E. Moreton*, of Salt Lake City, for defendants.

WADE, Justice.

Plaintiff has applied for a writ of certiorari to review a decision of the Industrial Commission denying him an award of compensaton for a hernia which he claims to have suffered during the course of his employment with the Continental Building Company as its building manager.

There are two questions to be determined: (1) Is the testimony of plaintiff so undisputed, uncontradicted, and of such persuasive force that the commission could not reasonably find that it was not true? (2) If the facts are as plain-

tiff's evidence tends to prove they are, could the commission reasonably conclude therefrom that claimant's hernia occurred on the stairway on March 18, 1942?

On the second question claimant's evidence tends to show: That on March 18, 1942, while descending the stairway in the course of his employment, claimant caught his heel and lost his balance and to prevent falling jumped about six steps to the landing below; that as he did so he caught the railing with his left hand, landed on left foot and fell against the wall, that thereupon he experienced a burning sensation in his groin which spread throughout his abdomen and he was nauseated; that the burning sensation lasted a day or two and the nausea a few hours; that his abdomen being still sore that evening while taking a shower he examined his body but finding no protrusions, swellings or outward indication that he had been injured he did not report it to his employer, nor lose any time from his work, nor did he consult a doctor. About June 7th he took a physical examination to join the army and it was discovered he had a hernia. On June 12th he reported his accident to his employer and on June 23rd he underwent an operation to correct this condition. The hernia did not protrude from his body, it was both direct and indirect, and from its nature and appearance and the tissue which was removed the doctor concluded that it could not have existed more than six months and might well have occurred on March 18th and been caused by the accident described by applicant. The doctor was also of the opinion that it probably could not be caused by coughing or ordinary bodily strain, but a fall and jerk such as applicant described on the stairs would be sufficient and that a burning sensation and nausea such as applicant described indicated that a hernia had been caused. Applicant further testified that he remembered of no other accident which could have caused it.

If these are the facts then the commission must conclude that applicant's hernia was caused by his fall on the stairway on March 18, 1942. No reasonable mind could conclude

otherwise. Applicant's accident showed exactly the kind of physical strain which would likely cause a hernia, he experienced a burning sensation and nausea which are the usual symptoms thereof, the hernia was discovered within three months thereafter, which is within the time when it would probably be caused, there was no other accident which could have caused it. Of course it is possible that it was not so caused, but there it no other reasonable explanation of these facts. A fact may not be found on mere possibilities but must be based on evidence. From these facts there is no evidence to support a contrary finding.

Coming now to the first question which is: Could the commission reasonably find that applicant's testimony was not true? The proof of applicant's accident on the stairway and the details thereof, that he was nauseated and experienced a burning sensation and the time it lasted, that he examined himself in the shower and concluded that he was not injured, all depend entirely on applicant's uncorroborated testimony. By their nature these facts are known only to him and cannot be disputed by other witnesses. Applicant being an interested witness would it be unreasonable for the commission to disbelieve his testimony although it was not contradicted by the testimony of any other witness?

Before determining that question we must dispose of plaintiff's contention that defendant stipulated that these facts are true. Defendant's attorney at the opening of the hearing stated:

"We admit everything with the exception that he sustained a hernia under date of March 18, 1942."

This statement might be taken to go that far, but during the hearing the parties did not so treat it, and no one being misled thereby we hold that it did not constitute an admission of those facts.

The commission apparently concluded that plaintiff's testimony was inconsistent with other conceded facts in the

case and on that ground denied his application. This appears from the following excerpt from the decision:

"Applicant's recital of an accident is denied, but there is no evidence in the record to the contrary. However, there are some very significant facts which we cannot overlook. Applicant continued on the job and made no report to his employer until after he went to Ft. Douglas for a physical examination on June 5 or 6, 1942. At that time he was advised by an army physician that he had a hernia. On June 7, 1942, he was examined by Dr. Silas S. Smith who confirmed the report of the army physician. Later on June 23, 1942, applicant went to the hospital for surgical treatment. He was discharged from the hospital on June 27, 1942, and went to work on August 7, 1942, for another employer, having left the defendant Continental Building Company employ on May 9, 1942.

"The record, therefore, shows that if applicant's contention is correct he suffered a hernia on March 18, 1942, and said nothing about it to his employer until sometime in June, 1942, or almost three months after the alleged injury. Mr. Smith was building manager and according to his own testimony made out reports of accident for other employees, and was thoroughly familiar with the requirements of the Workmen's Compensation Act. It is extremely difficult to understand why a man with Mr. Smith's intelligence and possessing a full knowledge of the requirements of the Workmen's Compensation Act, should neglect to report the accident and the injury to his employer. It is also quite significant that applicant was unaware of the existence of a hernia until he appeared at Ft. Douglas for a physical examination."

The facts which the commission found to be "significant" are not necessarily inconsistent with plaintiff's testimony. According to his testimony the accident was not of such a nature that would ordinarily cause a person to lose time from work. Nor is it unusual that he did not make a report of the accident to his employer. He testified that he examined his body and discovered no indication that he had been injured. This also explains why he was surprised when the army doctor discovered that he had a hernia. His testimony is, therefore, not in that regard so inherently improbable as to justify its disbelief. His testimony was not inherently improbable in other respects. His description of the accident might well happen to anyone;

it is not improbable that it might happen while he was alone; his experiencing a burning sensation and nausea appears to be natural under such circumstances; it would be perfectly natural for him to examine his body that evening, and his conclusion that he was not injured is not unlikely under the circumstances, and if he did have such an accident he would remember it when he discovered he had a hernia. His testimony, therefore cannot be rejected on that ground.

The weakness of plaintiff's case is that there is no evidence other than his own testimony that he had any accident, or the details or effects thereof, and he is an interested witness. By the nature of the accident it is impossible to contradict his testimony. Such a situation presents an opportunity for imposition. A person who discovers he has a hernia can readily make up the details of a story which would prove that it was caused by an accident in the course of his employment. Under such circumstances he would naturally tell that it occurred while he was alone, he would describe the usual symptoms when a hernia is caused and would make a plausible explanation of why he did not report it sooner. The person making such a fabrication can do so knowing that no one can directly contradict his testimony. Under these circumstances would it be unreasonable for the commission to refuse to believe his story?

This question must be answered in the negative. Everyone recognizes that an interested witness is not entitled to as much credibility as one who is not interested. Prior to the 19th century, the testimony of parties and interested witnesses was considered so unreliable that they were not allowed to testify at all. 20 Cornell Law Quarterly 1934-35, p. 33; Wigmore on Evidence, 3rd Ed. §§ 575 to 578. By statutes in most states this rule has been abolished except that the "testimony of a survivor of a transaction with a decedent when offered against the latter's estate" is still inadmissible. Wigmore on Evidence, 3rd Ed., § 578; §§ 104-49-1 and 104-49-2, U. C. A. 1943. This exception indicated that the legislature still considers such testi-

mony unreliable, especially where there is no fear of contradiction, the only other witness to the transaction being dead.

Many able scholars question the advisability of retaining this exception. See American Law Institute Model Code of Evidence, p. 340; Wigmore on Evidence, 3rd Ed., § 378, but none contend that such testimony should be given the same weight as that of a disinterested witness. The ■ interest of a witness may always be shown to affect his credibility. *State* v. *Cerar*, 60 Utah 208, 207 P. 597, which indicates that courts consider the testimony of interested witnesses less reliable on that account. In removing the disqualifications of parties and interested witnesses to testify the statutes almost invariably provided that "the jury are the exclusive judges of his credibility." § 104-49-1, U. C. A. 1943; *State* v. *Cerar*, supra; 20 Cornell L. Q. 1934-35, P. 37; Judge James M. Smith in *Hodge* v. *City of Buffalo*, 1874, 1 Abb. N. C. 356, has this to say on this question:

"Whoever has witnessed in our courts the operation of the law by which parties and those directly and most strongly interested in suits are permitted to testify therein, must have been convinced that it has opened a wide door for the perversion of the truth, and placed before litigants a temptation to falsehood and perjury, most difficult to resist. * * * That the interest of the witness must affect his testimony is a truth as universal in its application as men's mental and moral infirmities. All experience shows that under the bias of interest, men cannot judge correctly even when they most earnestly desire to do so; much less can they give fair and impartial evidence, when parties to litigation which not only involves their interests, but, as is almost always the case, excites their passions and prejudices. Under such influences men will, even though not consciously, suppress some facts, soften or modify others, and give to all such color and impress as is most favorable to themselves."

And Coke in Slade's Case, 1602, 4 Co. Rep. F. 95a, said:

"Experience proves that men's consciences grow so large that the respect of their private advantage rather induces men (and chiefly those who have declining estates) to perjury * * *."

Here the testimony of the applicant was to facts which by their nature were within his knowledge alone, and there-

fore could not be contradicted, we therefore do not have to determine the conclusiveness of the testimony of the parties and interested witnesses generally. The fact that by the nature of things the testimony of a party or interested witness could not be contradicted, and the failure of the opposing party to contradict when he could do so, has often been pointed out as a factor in the decision of the courts. In *Chesapeake & O. R. Co.* v. *Martin,* 283 U. S. 209, 51 S. Ct. 453, 456, 75 L. Ed. 983, the court said:

"Its accuracy was not controverted by proof or circumstance, directly or inferentially; and it is difficult to see why, if inaccurate, it readily could not have been shown to be so."

In *Sonnentheil* v. *Christian Moerlein Brewing Co.,* 172 U. S. 401, 19 S. Ct. 233, 236, 43 L. Ed. 492, the court said:

"* * * the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."

In the last case, the witnesses testified that they had no knowledge of fraud, which only they could know. These two cases apparently follow different rules but are distinguished by their facts on the question of the ability of the opposition to controvert the testimony of interested witnesses. The following cases seem to follow this distinction. *Kelly* v. *Jones,* 290 Ill. 375, 125 N. E. 334, 8 A. L. R. 792; *Hull* v. *Littauer,* 162 N. Y. 569, 57 N. E. 102; (discussed at length in Cornell L. Q. 1934-35, pp. 33 to 51) *King & King* v. *Porter,* 1923, Tex. Civ. App., 256 S. W. 627; *Beene & Trotter* v. *Rotan Grocery Co.,* 50 Tex. Civ. App. 448, 110 S. W. 162.

In the Cornell L. Q., Vol. 20, 1934-35, pages 33 to 51, there is an able article on this question by Sidney S. Bobbe, wherein he discusses the cases, particularly from New York. He points out that at first the New York courts held that the mere fact that the witness was a party or interested in the result of the case made it a question of

fact for the trier of the facts, that later the Hull case was decided, which lays down the general rule that the trier of fact is bound by the testimony of an interested witness, where it is not contradicted and there is no other grounds affecting its credibility. He points out that in that case the opposing side might have introduced evidence to the contrary but failed to do so, which was in effect an admission of its truth. But since that case the New York courts have followed the general rule laid down in the Hull case, even in cases where the witness was the only one who knew the facts in question. See *Fluegel* v. *Coudert*, 244 N. Y. 393, 155 N. E. 683; *St. Andrassy* v. *Mooney*, 262 N. Y. 368, 186 N. E. 867. He finally proposes the following rule for determining the question:

"The uncontradicted testimony of an interested witness is not to be treated as conclusive unless the adversary's failure to contradict it, under all the circumstances of the case, can be reasonably construed as an admission of its truth."

This rule would in the case at bar, make applicant's testimony a question of fact to be determined by the commission, whose decision would be binding on this court. This court has three times discussed this proposition, and each time has indicated that the credibility of the testimony of an interested witness is always a question for the trier of the facts. The question not being necessary for the decision of the cases what was said was mere dicta and not necessarily binding on this court now. In the case of *State* v. *Cerar*, supra [60 Utah 208, 207 P. 602], the court said:

"The interest of a witness in any particular case in which he becomes a witness may always be shown, and the effect, if any, of such interest upon the weight of the testimony, is always a question for the jury."

In *Kavalinakis* v. *Industrial Commission*, 67 Utah 174, 246 P. 698, 703, Justice Straup in a concurring opinion said:

"*  *  *  *the commission* * * *  *like a jury, is required to take as true undisputed or uncontradicted evidence,* if not opposed to probabilities or common knowledge, or contrary to natural or physical laws, or inherently improbable, or inconsistent with circumstances in evidence, or contradictory in itself, or *does not from the very nature of things come from witnesses directly interested, and it is impossible to secure opposing testimony,* or where the witnesses from whom comes the evidence are impeached or otherwise discredited."

Here Justice Straup lays down the exact rule above contended for. In *Norris* v. *Industrial Commission,* 90 Utah 256, 61 P. 2d 413, 415, this court said:

"But in order to reverse the commission  *  *  *  it must appear at least that (a) the evidence is uncontradicted and (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony and (c) *that the uncontradicted evidence is not wholly that of interested witnesses*  *  *  *  and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed."

This indicates that where the evidence is wholly that of an interested witness the trier of fact may reasonably refuse to believe it. Of course, the fact that a witness is corroborated on one point does not require the trier of fact to believe him on other material points where there ▮ is no corroboration. In view of the fact that applicant was the only witness to testify to the accident, to the resulting sensations, and to his reasons for not reporting it to his employer, and the further fact that these facts were by their very nature exclusively within his own knowledge and therefore could not be controverted by other testimony, the commission could reasonably refuse to believe his testimony, which they apparently did.

The order of the Commission is affirmed.

WOLFE, C. J., and McDONOUGH, JJ., concur.

LARSON, Justice (dissenting).

I disent. On March 18, 1942, claimant, while in the course of his employment as building manager for the defendant, Continental Building Company, was walking down a flight of steps in the Continental Building. His heel caught on the edge of one of the steps, and he tripped. To avoid striking his head against the wall at the foot of the stairs, he grabbed the hand rail with his left hand and jumped, landing on his feet on the landing below. He immediately experienced a burning sensation in his left groin, and a feeling of nausea. The nausea lasted for two or three hours, and the burning sensation for a day and a half or two days. That evening plaintiff examined himself, but could observe no bulge or apparent injury, and made no report of the accident. On June 6, 1942, he was informed by an examining army doctor that he had a hernia. He doubted the diagnosis, and immediately consulted his personal physician, his brother, who confirmed the diagnosis, and performed a surgical operation to close the rupture.

One of the operating surgeons described the hernia as a combination of direct and indirect hernia, and expressed the opinion that it had originated within six months prior to the operation on June 23, 1942.

Claimant made no report of the accident to his employer until after the doctors discovered the hernia in June. He was familiar with the compensation law, and the rule for reporting accidents, but did not think that he had sustained any compensable injury. After the doctors told him he had a hernia, he thought back, and the accident on the stairway was the only event he could recall which could have produced the hernia. The doctor testified that nausea and a burning sensation in the inguinal region are familiar symptoms in the origin of hernias, and readily suggest the occurrence of a hernia, although they may occur from other causes.

The commission found applicant did not suffer an injury arising out of, or in the course of his employment on March

18, 1942, and denied an award. The question is: Does the evidence require a finding that the hernia was the result of the accident on the stairway, and that a finding to the contrary would be arbitrary and capricious.

We have repeatedly held that where there is a conflict in the evidence, or where there is a question of fact to be resolved upon which reasonable minds may differ, we cannot disturb the findings of the commission. *Crane* v. *Industrial Comm.*, 97 Utah 244, 92 P. 2d 722; *Parker* v. *Industrial Comm.*, 78 Utah 509, 5 P. 2d 573; *Columbia Steel Co.* v. *Industrial Comm.*, 92 Utah 72, 66 P. 2d 124. We have likewise held that where there is competent evidence, substantial in character, as to a material fact, which evidence is uncontradicted, the commission cannot disregard such evidence. *Batchelor* v. *Industrial Comm.*, 86 Utah 261, 42 P. 2d 996; *Kavalinakis* v. *Industrial Comm.*, 67 Utah 174, 246 P. 698; *Hauser* v. *Industrial Comm.*, 77 Utah 419, 296 P. 780; *Ostler* v. *Industrial Comm.*, 84 Utah 428, 36 P. 2d 95. But evidence is not necessarily uncontradicted, just because no witness may testify to the contrary. Such evidence

"may be disbelieved where it is contrary to natural or physical laws, opposed to common knowledge, inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party or interested, or where in the very nature of things it is impossible to secure opposing testimony." 23 C. J. 47, 48; 32 C. J. S., Evidence, § 1038; *Kavalinakis* v. *Industrial Comm.*, supra.

In *Norris* v. *Industrial Comm.*, 90 Utah 256, 61 P. 2d 413, 415, discussing this question we said:

"Where the matter presented on appeal is the question of whether the commission should have in law arrived at a conclusion of fact different from that at which it did arrive from the evidence, a question of law is presented only when it is claimed that the commission could only arrive at one conclusion from the evidence, and that it found contrary to that inevitable conclusion. But in order to reverse the commission in this regard it must appear at least that (a) the evidence is uncontradicted, and (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony and (c)

that the uncontradicted evidence is not wholly that of interested witnesses or, if the uncontradicted evidence is wholly or partly from others than interested witnesses, that the record shows no bias or prejudice on the part of such other witnesses, and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed.

"If the commission should decide against the uncontradicted evidence under those conditions, its decision would as a matter of law be arbitrary and capricious, which is another way of saying that it would be unreasonable."

Let us measure the facts in the instant case by these tests. (a) No evidence was offered or received except that of plaintiff, of Dr. White, and the laboratory record from the hospital. There is no contradiction or variance as to the facts related anywhere in the record. That plaintiff tripped on the stairs as related by him is not disputed, and the commission found there was no evidence to the contrary. That he had a hernia which had probably developed within six months prior to his operation is admitted, and the expenses of the operation are conceded. (b) There certainly is nothing in the record intrinsically discrediting to the testimony of plaintiff and his physician; the doctor testified that a hernia such as this could readily occur as result of the fall testified to by plaintiff. (c) The uncontradicted evidence is not wholly that of interested witnesses. The hospital record, and Dr. White both corroborated the fact of the hernia, and the fact that it was of recent occurrence (within six months); the doctor also corroborated plaintiff in that nausea and a burning sensation, in the inquinal region such as plaintiff testified to, would follow and result from a hernia such as this; also that such hernia could result from such accident. The record shows no bias or prejudice on the part of any witness. (d) The evidence is such as to carry a measure of conviction to a reasonable mind. It is a simple plain unvarnished story,

frankly told, in most matters corroborated; reasonable, very possible, and in harmony with common knowledge and medical facts, judgment and experience. (e) It precludes any other hypothesis or explanation as being equally as reasonable. The record shows a hernia of not over six months' duration; which could readily have resulted from this kind of an accident; that the accident was immediately followed by nausea, and burning sensations in the left inquinal region, medically suggestive of occurrence of hernia; that a hernia like this does not produce a bulge, and does not result in prostration or inability to work; that there was no other accident or occurrence in the life of plaintiff, that could be recalled, which could produce a hernia; that this hernia was in part, at least, a direct one, which would only result from a sudden accident or application of force. Upon what other theory except a bald guess that it might have happened some other time or place can one account for it? How else would one account for the nausea and burning sensation? Upon what point could one postulate that it had occurred within six months other than this event? Where else can one infer a strain, blow or jar of sufficient intensity to produce a direct hernia such as this? We submit there is no other hypothesis adducible from the evidence as reasonable as this. (f) There is nothing in the record to indicate at all that the presence of the witnesses gave the commission any advantage over the court in aid of its conclusions.

It follows therefore, that plaintiff's evidence is competent, substantial, uncontradicted, and meets all the tests laid down by this court speaking through Mr. Justice Wolfe in the Norris case, supra. I am much concerned about some of the statements made to uphold the prevailing opinion, to the effect that the testimony of an interested party is just for that reason alone subject to suspicion and is to be discounted, as a matter of law. In these days, when every effort is being made to expedite legal determinations, and break the outmoded and useless shackles of three hundred years ago, and bring legal procedures and methods up to a practical and

functional conception in a modern world, it seems like a reversion or "throw back" to read that "Everyone recognizes that an interested witness is not entitled to as much credibility as one who is not interested," and also that "none contend that such testimony [of an interested witness] should be given the same weight as that of a disinterested witness." I always thought every jury was told by the court that they must apply *the same tests* to the testimony of a party as to that of any other witnesses. Then the prevailing opinion says:

"In removing the disqualifications of parties and interested witnesses to testify the statutes almost invariably provided that 'the jury are the exclusive judges of his credibility,' " and cites Section 104-49-1, U. C. A. 1943.

I think this is not a proper statement, as it gives implication that the section was enacted to remove a prior disability existing in the state against an interested party testifying at all, and subjecting his testimony to a special jury test. That section provides that substantially all persons except those mentally incapacitated are competent witnesses, and the credibility of any and all witnesses is for the jury, to be judged by the tests fixed by the section, which are the same for all witnesses; provided that a party directly interested in the outcome of a civil suit *may not testify* as to any statements made by or transaction with a deceased person, when the legal representative of the deceased person is the adverse party in the suit. Then the opinion cites the case of *State v. Cerar*, 60 Utah 208, 207 P. 597,

"which indicates that *courts consider* the testimony of *interested* witnesses *less reliable* on that account." (Italics added.)

It does not so indicate. It merely indicates that in any given case the trier of the fact *may* consider it less reliable on that account. The California, and the Montana codes provide:

"a witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies * * *." Civ. Code Proc. Cal. § 1847; Rev. Codes Mont. 1935, § 10508.

I cannot subscribe to the doctrine that just because one may be a party or interested in a matter he thereby loses his manhood and character in regard thereto. I think the word of a man of character, even though he be interested, is worth more than the word of a weakling, a "wishy wash" an unstable or unmoral person who happens to be, or appears to be, disinterested. I do not subscribe to the doctrine that all men suck eggs, but some hide the shells. I therefore dissent.

MOFFAT, Justice (concurring).

I concur in the fact solution contained in the dissenting opinion of Mr. Justice LARSON.