# GODFREY v. INDUSTRIAL COMMISSION et al.

No. 6610. Decided October 15, 1943. (142 P. 2d 174)

*Joseph E. Richards,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Zar E. Hayes,* Deputy Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

LARSON, Justice.

Certiorari for review of the commission's order denying compensation.

Plaintiff was employed by the Palfreyman Construction Company as a carpenter foreman, supervising work in the construction of a number of residences near Ogden, Utah. As a part of his supervisory duties, plaintiff was required to walk from unit to unit, inspecting and approving the finished work, and supervising work being done. According to his testimony, he was required to walk as much as ten or fifteen miles a day. Due to excavation and grading at the site, dirt and sand had been loosened, and the walking was rough and difficult. The weather was extremely hot. Plaintiff testified that a few days prior to August 12 he was bothered by a burning sensation on his feet. He bathed them in Epsom salts solutions. A day or two after that he took off his socks in the middle of the day, and discovered that blisters had formed on the bottoms of his feet. Some draining of the blisters had made his socks sticky. On August 12, when he first saw a doctor, the

blisters were worse, and his feet were swollen to the ankles. For three days after this visit, plaintiff felt better and continued work, but on August 15, his legs were swollen, and he had to quit work. From that time until January 9, 1943, plaintiff was unable to work, and during that time was under the treatment of different doctors. The last of these, Dr. W. C. Walker, testified that he did not see plaintiff until the blisters had been completely healed, and at that time, plaintiff was suffering from nephritis, which he thought was the result of the infection of his legs and feet.

The Commission found that the "blisters were not caused by an accident arising out of, or in the course of applicant's employment." The applicant's own testimony is that for some time while on the job he had been troubled by his feet, and upon coming home from work had bathed them in Epsom salts solution. He testified that he first noticed the blisters while he was on the job; that he always carried an extra pair of clean socks, and upon removing his socks to change them in the middle of one shift, he found that some of the blisters had broken, and there was a discoloration on his socks. He made complaint about his feet during the working hours to one of the contractors, R. C. Green, superintendent on the job. Green asked him to put off going to the doctor until the end of the shift, or two or three days if possible, and gave him some home remedy. Several days later he reported his condition to James Watson, who handled the bookkeeping and office work for the partnership. Watson, on seeing the condition of plaintiff's feet, told him to "take a lay-off no matter what Mr. Green says, and you go to a doctor." It was not until the day he spoke to Watson, August 12, that plaintiff went to a doctor. Plaintiff was the only witness called at the hearing who testified as to the working conditions on the job and as to the forming of the blisters. Applicant's wife testified that he had complained of his feet being sore for about a week before going to the doctor, but said she would "rather not say

about the blisters before he went to the doctor." The most that she could say was that applicant's feet were sore before the time he visited the doctor. The remainder of the testimony is from the doctors who treated plaintiff. Dr. Greenwell, the first doctor visited by plaintiff, testified that some of the blisters were broken at the time of the visit, and that there was discoloration on applicant's socks; also that applicant's feet were inflamed and swollen, the swelling extending up to his ankles. Asked as to the origin of the blisters, Dr. Greenwell stated that he had similar cases caused by extreme heat, though he believed that friction would help cause them. Dr. Pearsall testified that he was first called on August 28, and the next day when he saw the applicant he found him suffering from streptococcic lymphangitis, the apparent portal of entry of this infection being blisters on the feet. Because the accompanying nephritis was not clearing up properly, Dr. Pearsall referred applicant to Dr. Walker, a kidney specialist. Dr. Pearsall did not testify as to the possible cause of the blisters, but did say that the infection was most probably from the skin of the patient himself, stating that streptococcic bacteria are always present on the normal skin, and the blisters were merely the break in the skin through which the infection could enter. Dr. Walker testified that he was of the opinion that the kidney condition was caused by an infection entering through the blisters on the feet. He gave no opinion as to the possible cause of the blisters. He did express the opinion that this was a streptococcic infection rather than a dermatitis.

Under the holding of this court in *Smith* v. *Industrial Commission*, 104 Utah 318, 140 P. 2d 314, the commission is entitled to disbelieve the testimony of an interested witness, Looking, then, at the evidence, without the testimony of applicant, we have merely the fact that he had blisters on his feet on August 12th; had been complaining of sore feet for about a week prior to that; and that these blisters might have been caused by friction

or heat, or a combination of the two of them. There is no word as to how, where or when these blisters formed. If, then, the commission chose to disbelieve applicant as they are entitled to do under the holding of the Smith case, supra, there would be no evidence requiring the commission to make an award of compensation. Only by considering applicant's testimony is there a hint of the cause of the blisters, or when or where they were formed.

Cases similar to the one at bar have before been decided by this court. In *Russell* v. *Industrial Comm.*, 86 Utah 306, 43 P. 2d 1069, 1073, the commission refused an award, and upon review, this court affirmed the action. Evidence was that while employed, a small blister appeared on one toe of the deceased, infection followed from which the man subsequently died. There was some conflict in the medical testimony as to whether infection entered from the blister or was caused by a spider bite. After stating the well recognized rule that this court may not weigh conflicting evidence, and may only interfere with the commission's findings of fact "in those cases where an award is granted without support of competent evidence, and, likewise, where an award is denied against uncontradicted evidence without any reasonable basis for disbelieving the same," the court then goes on:

"In the instant case there is no direct evidence as to when, how, or where Mr. Russel received the blister on his toe. He may have received the injury while he was working * * * but he may, so far as the evidence discloses, have received it elsewhere. When any one of two or more inferences may reasonably be drawn from the evidence, this court is not authorized to direct which inference must be drawn."

This statement is applicable to the evidence adduced at the hearing. There is in the record no evidence that the blisters either formed or broke while plaintiff was working.

*Spackman* v. *Industrial Comm.*, 97 Utah 214, 91 P. 2d 511, 512, is a case where deceased left home, according to

testimony, with no visible marks on his neck. Between 8:30 and 9 a. m. on the same morning, he showed fellow workmen what he believed to be an insect bite on his neck. Infection resulted from this abrasion, and Spackman died from the infection. There was also evidence that there were insects in and about the locker room where deceased changed his clothes at about 7:30 that morning. This court said:

"While the Commission could very well have arrived at the conclusion that the abrasion happened in the course of the employment or that the germs entered the abrasion during the course of the employment, it was not, from the evidence, so compelled to find."

The court goes on to say that, since it was not an inevitable conclusion that the accident occurred in the course of employment, the commission did not act unreasonably in failing to so find, even though the evidence pointed that way.

*Pace* v. *Industrial Comm.*, 87 Utah 6, 47 P. 2d 1050, 1051, is perhaps the case most similar to this one. There, deceased was a dancer in a theatre chorus, and one night upon coming home she showed her sister a blister on her heel. The next night it was sore and the foot swollen. She continued her dancing for about a week when her condition got so bad a doctor was called. Infection had set in, and she subsequently died. Affirming the commission's action in denying compensation, the court said:

"The Commission may have been in doubt as to when the blister developed, or when it broke or the cause of its breaking and becoming a portal of entry for infection, or the cause or source of the infection or when it arose."

In the case at bar as in the Pace case, the evidence certainly points to the employment as a probable cause of the blister, if not of the infection, but in neither case is there evidence which would exclude the possibility of the injury having occurred in some other way. This court speaking through Mr. Justice Moffat in *Kent* v. *Industrial Comm.*, 89 Utah 381, 57 P. 2d 724, 725, said:

"When the Industrial Commission denies compensation and the case is brought to this court for review, a different type of search of the record is demanded than when the Industrial Commission makes an award of compensation and the record is likewise brought here for review.

"In the case of denial of compensation, the record must disclose that there is material, substantial, competent, uncontradicted evidence sufficient to make a disregard of it justify the conclusion, as a matter of law, that the Industrial Commission arbitrarily and capriciously disregarded the evidence or unreasonably refused to believe such evidence. * * *

"In case of an award of compensation, all the record is required to disclose is that there is sufficient, competent, material evidence in the record to support the award. That there is a conflict in the evidence, or that this court might or would have found differently had the evidence been submitted to it as a trier of the facts, is of no consequence. The Industrial Commission is a fact-finding body, and in case there is any substantial evidence to support its findings, its findings are conclusive upon this court and may not be disturbed."

Of course in the instant case, since we are dealing with a denial of compensation, we are concerned only with the first paragraph of the above test. Since there is not in the record, "material, substantial, competent uncontradicted evidence sufficient to make a disregard of it justify the conclusion as a matter of law, that the Industrial Commission * * * disregarded the evidence or unreasonably refused to believe such evidence," we must conclude that the commission did not act arbitrarily in holding that the blisters did not arise out of, or in the course of employment.

The Commission having found that the blister did not arise out of or in the course of the employment, is there evidence to compel a finding that the infection subsequent to it arose out of or in the course of employment? On this question the medical testimony is almost overwhelming to the effect that the most probable source of infection was from the skin or clothing of the

applicant, and that the infection in the skin or clothing did not arise out of or in the course of employment. In the face of such testimony we cannot say that the Commission acted unreasonably or arbitrarily in finding that the infection did not arise out of employment.

For the foregoing reasons the action of the Commission denying an award is affirmed.

McDONOUGH and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. It appears to me that the Commission could, as reasonable men, conclude that the applicant had not carried his burden of proof that the germs which entered the portal of the broken blister came from the industry or if from the person of the applicant because of operations connected with the industry; moreover, that under the evidence the Commission could choose between inferences as to whether the blisters were caused by operational activity in the industry or from causes originating in the person of the applicant. On the question as to whether the blisters broke by reason of industrial activities it would be far more difficult for the Commission to find that such had not arisen out of or in the course of the employment but it is not clear that the Commission would have been impelled to so find. But even granted it was impelled to so find, it is the infection caused by the germs through the portal of entry furnished by the broken blisters which is the accident (if an accident) causing the disability. If from the evidence the commissioners may infer that the infection entering the portal produced by industrial activity was itself referable to the industry, we of course would not overturn such finding, but when the evidence also supports the opposite conclusion we will not overturn that. Such is the case here. Viewing the matter as I do I cannot see that *Smith* v. *Industrial Comm.*, 104 Utah 318, 140 P. 2d 314, is applicable.

WADE, Justice (concurring).

I concur, but I wish to call attention to the fact that the rule stated in the case of *Smith* v. *Industrial Comm.*, 104 Utah 318, 140 P. 2d 314, obviously has no application to this case. Here all of the plaintiff's testimony prior to the time he told Green, his foreman, about his condition, was against his interests, from then on his testimony could have been contradicted had the company desired to do so. The rule laid down in the Smith case only applies where the facts testified to by an interested witness are such that the other side has no way of proving whether they are true or false.