[Civ. No. 14123.   Second Dist., Div. Two.   Oct. 13, 1943.]

CHARLOTTE E. LEET, as Administratrix, etc., Respondent, v. UNION PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

E. E. Bennett, Edward C. Renwick and Malcolm Davis for Appellant.

Martin & Downey, Hildebrand, Bills & McLeod and Louis H. Brownstone for Respondent.

MOORE, P. J.—Plaintiff was awarded damages on account of the death of her intestate, Seymour F. Potts, resulting from injuries received by Potts while in the employ of defendant. The action was brought under the provisions of

the Federal Employers Liability Act, 45 U.S.C.A., section 51, and alleged that the defective condition of the brake beams constituted a violation of the Federal Safety Appliance Act. (45 U.S.C.A., sec. 11.) Defendant appeals on two grounds, to wit: (1) the insufficiency of the evidence to support the finding that the defective brake rigging was the proximate cause of decedent's death; (2) that the court erred in excluding from the evidence defendant's rule 26 which requires that a brakeman, when emergency repair work is about to be done on the cars of his train and a blue signal is not available, notify the engine crew so that protection may be given those engaged in making the repairs.

On July 12, 1941, the train on which decedent was serving as a brakeman had proceeded westerly from Pocatello, Idaho, to Bliss where it took the siding near the switch pursuant to instructions in order to permit an east bound train to pass. As the rear brakeman on the train, decedent was riding in the caboose while all other members of the crew rode in the engine. When the train stopped at Bliss pursuant to the rules of the defendant Potts inspected the rear portion of the train in order to remedy such defects as he might find "as to running gear, brake and draft rigging, loose doors or other projecting appliances, etc." as required by defendant's rule 824. After the engineer and fireman had completed inspection of the front part of the train they remounted the engine. As soon as the eastbound train had cleared both the head brakeman and the conductor signaled the engineer to go forward. The engineer blew the whistle, started the bell, released the brakes and moved ahead. After the train had moved about 75 feet it was stopped on application of the emergency brakes by a hobo when he saw the decedent beneath the moving cars. On learning of the tragedy, the crew found the body of the brakeman under the middle of the second car ahead of the caboose. Also, they discovered that the brake head of the third car ahead of the caboose had come out of the hanger and was dragging on the rail; that one of the brake shoes and its key were missing and the brake assembly which operated against the rear wheels of the front truck was on the ground on the south side of the car. Investigation disclosed that at about seven miles east of Bliss the keeper on the back of the brake shoe had broken and the key and shoe had fallen out. Consequently, when the brakes were applied at Bliss, the southerly brake head came out of the brake hanger and fell

upon the road bed. It would have been extremely hazardous to start the train with the brake head dragging on the ground. It was the duty of decedent to remedy the defect either by removing the brake assembly or by replacing the brake head in the brake hanger. Upon discovering the defect, in order to make the necessary adjustment he went underneath the car. Although it is a scrupulously regarded practice for the conductor to know where his men are before moving the train, the conductor ordered the engineer to proceed forward without inquiring as to the whereabouts of his missing brakeman.

The Employers' Liability Act (sec. 51) in effect provides that every interstate common carrier shall be liable in damages to the personal representative of an employee for the death resulting to such employee by reason of any defect in its cars or appliances due to the carrier's negligence. Such employee shall be considered as an employee in interstate commerce and entitled to the benefits of the act.

Section 11 of the Federal Safety Appliance Act makes it unlawful for a common carrier to permit a car to be used on its line unless all cars are equipped with efficient hand brakes.

Where an inefficient brake causes an injury the carrier in interstate commerce under the Safety Appliance Act cannot escape liability, and proof of negligence on the part of the railroad is unnecessary. (*Karberg* v. *Southern Pacific Co.*, 10 Cal.App.2d 234, 246 [52 P.2d 285]; *Newkirk* v. *Los Angeles Junction Railway Co.*, 21 Cal.2d 308 [131 P.2d 535].)

(1) In support of its contention that the evidence is insufficient to support the implied finding that the defective brake rigging was the proximate cause of the accident defendant has indulged in a lengthy essay to demonstrate that the defect in question was not the proximate cause of decedent's death, and that his act in attempting to adjust the defective brake rigging was "an abnormal, unexpected and unforeseeable reaction to the situation." It is contended that if the defect was the proximate cause of his death, his act was a risk which he assumed by his employment and that he was guilty of contributory negligence; that the defective brake rigging was a static condition when discovered by decedent; that he was under no obligation to go beneath the car to make the "repair"; that in proceeding as he did, he not only scorned the caution that a reasonably prudent man under similar circumstances would have observed but he violated a positive rule (No. 26) that had been adopted to assure his

safety and that obedience to the rule was his primary duty; that the taking of such voluntary affirmative action was the sole proximate cause of his injuries.

There are two answers to defendant's contentions. ■ The first is that the primary duty rule was never applied to a case in which the killed employee was engaged at the time of his injury in repairing a safety appliance, even though his act was in violation of a company rule. This is exemplified in a number of decisions, published prior to the 1939 amendment of the act. In the case of *Chicago Great Western Railroad Co.* v. *Schendel* (1925), 267 U.S. 287 [45 S.Ct. 303, 69 L.Ed. 614], a drawbar had pulled out of a car whereupon it was chained to another car and the train was pulled onto a siding where the damaged car was to be left. This siding was on a grade. Mr. Ring, the brakeman, who was later killed, directed his superior to proceed and then without advising the crew, contrary to published rule, he went between the two cars to disengage the chain. After the engine was cut off, the crippled car ran slowly down the track, catching Ring in the chain which caused his fatal injuries. In rejecting the claims (1) that the defective drawbar did not contribute to the injuries and (2) that Ring's violation of the rule was a proximate cause of the injury the court held that such an employee does not assume the risks of his employment nor is he guilty of contributory negligence when the violation by the carrier of a statute enacted for the safety of employees has contributed to the injury of such employee. It was similarly held in two subsequent decisions also antedating the 1939 amendment where employees were injured in attempting to repair safety appliances. (*Minneapolis St. Paul & Sault Ste. Marie Railway Co.* v. *Goneau,* 1926, 269 U.S. 406 [46 S.Ct. 129, 70 L.Ed. 335]; *Anderson* v. *Baltimore & O. Railway Co.,* 89 F.2d 629.)

But regardless of the holdings in the last cited cases the transformation of the law resulting from the 1939 amendment to the Employers' Liability Act necessitates an affirmance of the judgment now before us. ■ A scrutiny of that amendment shows that the defendant is foreclosed of its claim to plead either assumption of risk, contributory negligence, or the "primary duty rule," as held in *Unadilla Valley Railroad Co.* v. *Caldine,* 278 U.S. 139 [49 S.Ct. 91, 73 L.Ed. 224]. The amendment came subsequent to all of the decisions cited by defendant. (See *Great Northern R. Co.* v.

*Wiles* (1916), 240 U.S. 444 [36 S.Ct. 406, 60 L.Ed. 732]; *Lang* v. *New York Central R. Co.* (1920), 255 U.S. 455 [41 S.Ct. 381, 65 L.Ed. 729]; *McCalmont* v. *Pennsylvania R. Co.* (1922), 260 U.S. 751 [43 S.Ct. 250, 67 L.Ed 495]; *Bobango* v. *Erie R. Co.* (1932), 57 F.2d 667; *Pere Marquette Ry. Co.* v. *Haskins* (1933), 62 F.2d 806; *Frese* v. *Chicago B. & Q. R. Co.* (1923), 263 U.S. 1 [44 S.Ct. 1, 68 L.Ed. 131]; *Davis* v. *Kennedy* (1924), 266 U.S. 147 [45 S.Ct. 33, 69 L.Ed. 212]; *Unadilla Valley Railroad Co.* v. *Caldine, supra; International-Great Northern R. Co.* v. *Lowry* (1938), 132 Tex. 272 [121 S.W.2d 585]; *Flack* v. *Atchison, T. & S. F. Railway Co.* (1920), 285 Mo. 28 [224 S.W. 415]; *Yoakum* v. *Lusk* (1920), (Mo.) 223 S.W. 53; *Kern* v. *Payne* (1922), 65 Mont. 325 [211 P. 767]; *Hylton* v. *Southern Ry. Co.* (1937), 87 F.2d 393; *Van Derveer* v. *Delaware, L. & W. R. Co.* (1936), 84 F.2d 979; *Bradley* v. *Northwestern Pac. R. Co.* (1930), 44 F.2d 683]; *Paster* v. *Pennsylvania R. R.* (1930), 43 F.2d 908.) The effect of the holdings of the cited decisions is that the interstate commerce carrier may defend upon the grounds of assumption of risk and contributory negligence under circumstances such as those of the instant case. With unusual force and clarity defendant has impressed and fortified the doctrine declared, by quotations and illustrations from the several decisions all of which announced the law correctly as it existed prior to 1939. In that year section 51 of the Employers' Liability Act was amended by the addition of the following:

"Any employee of a carrier, any part of whose duties shall be the furtherance of interstate or foreign commerce; or shall in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

At the same time section 54 of Chapter 2, Title 45, United States Code Annotated was amended to read as follows:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier;

and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

▇ The purpose of this amendment was to release the employee from the burden of the assumption of risk, and it requires that cases based upon the Employers' Liability Act be tried as though no doctrine of assumption of risk had ever existed. The case of *Tiller* v. *Atlantic Coastline Railroad Co.* (318 U.S. 54 [63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967]) is wholly decisive of all issues involved in the case now before us. It arose in a federal court of Virginia. Mr. Tiller was a policeman in the service of the railroad company and was familiar with the premises and with the instructions that he must watch out for the movement of trains. As he stood between two tracks in the switch yards on a dark night inspecting the seals of a slowly moving train on one track, he was suddenly hit and killed by a train backing in the opposite direction on the other track. In answer to Mrs. Tiller's allegation of negligence on the part of the company in failing to provide a reasonably safe place to work the company denied negligence, pleaded contributory negligence and assumption of all risks normally incident to his employment. The trial court directed a verdict for the defendant on the grounds that there was no actionable negligence and that the cause of the death was speculative and conjectural.

In a ringing decision the Supreme Court reversed the judgment with a learned and elaborate review of the doctrine of the assumption of risk as it had been applied in the English courts as well as in both state and federal courts in actions brought under the Employers' Liability Act after its first enactment in 1906. The numerous complications arising from the application of assumption of risk, contributory negligence, the "primary duty rule," "promise to repair" and "peremptory order," were all cast into the discard by the amendment of 1939. The effect of the amendment, said the court, was to release the employee "from the burden of assumption of risk by whatever name it was called. . . . The doctrine of assumption of risk cannot be abolished in toto and still remain in partial existence. . . . In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.''

The doctrine of assumption of risk is a vestigial survival of an age widely fraught with human misery. It prevailed during an epoch in the history of industry when statutes were enacted and judicial decisions were made on the theory that master and servant played at a game into which both entered upon an equal basis. It was a time when the interest of society in the fortunes of the toiler had received but scant or no consideration. While Congress has not advanced its humanizing standards as far as have the states in establishing methods whereby to insure the employee against total loss, yet, it has by the Federal Employers' Liability Act abolished "assumption of risk" as a defense in all cases *where negligence of the carrier has been once established.*

■ Since the negligence of the defendant in sending out a car with its brake rigging in a defective condition was concededly established, it follows that defendant may not be relieved from the consequences of its neglect by the claim that plaintiff assumed the risk of such negligence.

■ (2) Rule 26 which was excluded from the evidence reads as follows:

"When emergency repair work is to be done under or about the cars in a train, and a blue signal is not available, the engineman and fireman must be notified and protection must be given those engaged in making the repairs."

In view of the amendment to section 54 and of the Tiller decision rule 26 was immaterial to the issues and was properly rejected. (*Chicago Great Western Railroad Co.* v. *Schendel, supra.*) If there was no assumed risk or contributory negligence to be attributed to the brakeman, no amount of rules adopted by defendant could alter the law if the company was itself negligent.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied November 4, 1943, and appellant's petition for a hearing by the Supreme Court was denied December 6, 1943.