[Civ. No. 12973. First Dist., Div. One. Feb. 11, 1946.]

SAMUEL E. PERRETT, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and Louis H. Brownstone for Appellant.

Johnson & Ricksen and Lawrence L. Howe for Respondent.

PETERS, P. J.—The plaintiff, while working in the course and scope of his employment with defendant, was. run over by a freight car when he fell while attempting to board the moving train, his leg being severed below the knee. Defendant was admittedly then engaged in interstate commerce. This action was brought under the Federal Employers' Liability Act (45 U.S.C.A., § 51 et seq.) The jury brought in a verdict for defendant. Plaintiff appeals, his sole ground of complaint being that certain instructions offered by defendant and given by the trial court, were prejudicially erroneous. With this contention we agree.

The complaint charges two separate acts of negligence on the part of defendant. The first of these was dismissed at the trial. The charge of negligence upon which the cause was tried alleges that the plaintiff was thrown from the freight

car in question as a result of the negligent operation of the train by the employees of defendant. Defendant, in addition to denying this charge, affirmatively pleaded contributory negligence on the part of plaintiff. At the trial the factual issue simmered down to whether plaintiff was thrown from the side of the freight car as the result of a jerk of the train, caused by improper handling of the engine, or whether he fell or slipped through no fault of his employer. A reading of the record demonstrates that the evidence on this basic issue was in sharp conflict and would have supported a verdict either way.

The accident occurred at about 4:40 p. m. on February 8, 1944. It was raining. Plaintiff, then age 42, had 14 years of railroading experience. On the day in question he was acting as brakeman on a westbound freight, consisting of 99 cars and an engine of the heaviest type used by the Southern Pacific Company. This train pulled into a siding at El Monte to permit an eastbound freight to pass. Plaintiff was in charge of cars 40 to 60 in the middle of the train, and was required to make a rolling inspection of his cars to ascertain whether there were any sliding wheels or dragging brakes. Since such an inspection can only be made from the ground while the train is moving, brakemen, after making such an inspection, are required to board the freight while the train is moving. A company rule provides that when a freight train starts up, its speed must not exceed eight miles per hour for a distance sufficient to permit such a rolling inspection. Plaintiff, after making such an inspection of some of his cars, attempted to board the freight car from which he fell. He testified, and there is some corroborating testimony, that the train was then going in excess of 15 miles per hour. Defendant's testimony was that the train was then proceeding between eight to 12 miles per hour. Several of defendant's witnesses fixed the speed at 10 or more miles per hour. Plaintiff testified that he was safely aboard the car with both feet in the stirrup and both hands gripping a grab iron when he was thrown off by a most violent and unusual jerk of the train. Defendant's testimony was to the effect that the train started slowly and smoothly and that there was no unusual jerk. It was plaintiff's theory that the alleged jerk was caused by improperly controlled slack action in the train. There is approximately six inches of slack between each freight car, the mechanism by which the cars are attached

having that much spring or give. In a train 99 cars long the total slack will be in excess of three car lengths in extent. This slack may be bunched in one part of the train, that is, cars may be closer together in one part of the train than in another. In starting, if the engine is not properly handled, the slack may be stretched out too fast, resulting in a jerk which, like the cracking of a whip, is cumulative in force as it progresses through the train. It may be violent enough to break the train in two. Under certain conditions it may be felt in one part of a long train and not in other parts. Even if the engine is properly handled there is some slack action, but it can be reduced to a minimum. There is a company rule relating to slack action which states that "the heavier the engine and the longer the train, the greater is the care required." Conditions arising out of slack action are aggravated by a too rapid starting of the train.

It is an admitted fact that there is a saucer grade at the El Monte siding, and that starting therefrom there is a long steep grade westward. The result was that some of the cars were still going downhill while the engine and front cars were going uphill, a situation that may aggravate slack action.

It is obvious, and the parties admit, that in this state of the record the evidence would support a finding either way on the basic issue as to whether defendant was negligent.

As already indicated, this action was properly filed under the Employers' Liability Act. That statute is not a compensation act. Liability of the employer is predicated upon negligence. (*Tennant* v. *Peoria & P. U. Ry. Co.*, 321 U.S. 29 [64 S.Ct. 409, 88 L.Ed. 520]; 45 U.S.C.A., § 51.) The action differs from the old common-law action in tort between master and servant in that the so-called "common law" defenses are not applicable. The fellow servant rule has been eliminated. Contributory negligence is not a defense except to mitigate damages. Before 1939 the plea of assumption of risk was available as an absolute defense to the employer except where the employer's violation of a safety act proximately contributed to the injury. The result was that the cases prior to 1939 drew a sharp distinction between contributory negligence and assumption of risk. In 1939 section 54 of the act was amended to abolish the defense of assumption of risk. That amendment reads as follows: "That in any action brought against any common

carrier under or by virtue of any of the provisions of this chapter to recover damages for injury to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . .'' It is admitted by all concerned that before, and since, the 1939 amendment negligence of the employer was, and is, the basis of liability under the act.

The trial court instructed at length on this issue and in no uncertain language told the jury, quite properly, that plaintiff could not recover unless he proved that defendant was negligent and that such negligence proximately caused the injury. But, in addition, at the request of defendant, the trial court instructed that: ''In cases of this kind, the law imposes upon the employee the burden of assuming the ordinary risks of injury which are incident to his employment, when the work is being done in the usual and ordinary way, and without negligence on the part of the defendant. If, from all the evidence in the case, you find that there was no sudden, unusual or violent jerking out of the ordinary in connection with the handling of the cars on which Mr. Perrett was working at the time of his injury, then your verdict must be in favor of the defendant, Southern Pacific Company.''

The court also instructed at the request of defendant that: ''If it appears from the evidence in this case that the jerk of the train complained of by the plaintiff, was due to what has been referred to in the evidence as 'slack action,' and that such slack action and such jerk are a normal and usual incident to the starting of a train such as that involved in this case, when ordinary care is used, then the defendant was not guilty of any negligence in the matter of the movement of the train at the time the start was being made.

''If, in the usual and normal conduct of reasonably prudent persons in the operation of trains, a jerk or running in of slack, such as claimed by plaintiff in this case, is an incident to the starting of a train of the type and kind referred to, in the evidence, neither the Southern Pacific Company nor any of its employees, can be found guilty of negligence because of such jerk or such slack action.''

These instructions when read as a whole were clearly erroneous. The last two paragraphs quoted imply that no

matter how dangerous and unreasonable it may have been to operate this type of train, if the actual handling of the train was reasonably prudent, plaintiff could not recover, even though a prudent person would not operate the type of train involved. The questions that were before the jury were whether the jerk, if any, was caused by the negligence of the railroad company, and, if so, whether such jerk was the proximate cause of the accident. These instructions withdrew from the jury the inference that the operation of this type of engine and train might itself be negligence. ■ Custom and usage, of course, are not conclusive evidence of due care. (*Haskins* v. *Southern Pac. Co.*, 3 Cal. App.2d 177 [39 P.2d 895].) ■ When these instructions are read with the first quoted instruction, and particularly the first sentence of that instruction, there can be no doubt that the jury was erroneously instructed. That sentence, when read in the light of the next sentence, and in view of the other quoted instructions, told the jury that plaintiff assumes the risk when work is done in the ordinary way without negligence on the part of the employer and that the plaintiff could recover only upon proof of an unusual jerk. Such instructions inserted into the proceeding an entirely false issue, in direct violation of the 1939 amendment to the statute as interpreted in the leading case of *Tiller* v. *Atlantic Coast Line R. R. Co.*, 318 U.S. 54 [63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967]. (See annotation in 143 A.L.R. 978 where later cases are collected and discussed.) This being a federal enactment, this court is, of course, bound by the United States Supreme Court interpretation of the statute. The holding in this case is conclusive on this appeal.

In the Tiller case the employee was engaged at night in inspecting seals on a train moving slowly on one track when he was hit and killed by a train backing on another track. No special warning was given, although a brakeman with a lantern was riding on the rear car on the side opposite the employee. The employer denied negligence, pleaded contributory negligence in mitigation, and affirmatively pleaded that the decedent had assumed all the risks normally and necessarily incident to his employment. Defendant's motion for a directed verdict was granted by the district court on the grounds that the cause of death was speculative and that there was no evidence of actionable negligence. The circuit

court affirmed (128 F.2d 420), holding that the deceased had assumed the risk of his position, distinguishing between assumption of risk as a defense by employers against the consequence of their own negligence and assumption of risk as negating the conclusion that negligence existed at all. The United States Supreme Court reversed the case. The majority opinion, in which apparently all of the justices, with the exception of Mr. Justice Frankfurter, concurred, was written by Mr. Justice Black. After referring to the circuit court holding the opinion states (p. 58) : ''We find it unnecessary to consider whether there is any merit in such a conceptual distinction between aspects of assumption of risk which seem functionally so identical, and hence we need not pause over the cases cited by the court below, all decided before the 1939 amendment, which treat assumption of risk sometimes as a defense to negligence, sometimes as the equivalent of non-negligence. *We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence.'* '' (Italics added.)

The opinion contains an interesting discussion of the origin and growth of the doctrine of assumption of risk, and of the different meanings of the phrase. It is pointed out how difficult it is to draw the line between assumption of risk and contributory negligence. The court then holds (p. 64) : ''It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, *releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed.*'' (Italics added.) After discussing the legislative history of the 1939 amendment, Mr. Justice Black states (p. 66) :

*''The doctrine of assumption risk can not be 'abolished in toto' and still remain in partial existence as the court below suggests. The theory that a servant is completely barred from recovery for injury resulting from his master's negligence,* which legislatures have sought to eliminate in all its various forms of contributory negligence, the fellow servant rule, and assumption of risk, *must not, contrary to the will of Congress, be allowed recrudescence under any other label*

*in the common law lexicon.* The Act of 1908 and the amendment of 1939 abolish the post-*Priestly* v. *Fowler* defenses and authorize comparison of negligence instead of barring the employee from all recovery because of contributory negligence. *They leave for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate cause of the injury.*

"In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." (Italics added.)

Mr. Justice Frankfurter wrote a concurring opinion, in which he agreed that the granting of the directed verdict was error, but in which he vigorously disagreed with the reasoning in the majority opinion. He argues, as does the defendant in this case, that the 1939 amendment did not repeal the doctrine of assumption of risk in the sense that the employee assumes the risk of injury from hazards of his employment which no amount of care on the part of the employer can avoid. After developing this point at some length Mr. Justice Frankfurter states (p. 72): " 'Assumption of risk' as a defense where there is negligence has been written out of the Act. But 'assumption of risk,' in the sense that the employer is not liable for those risks which it could not avoid in the observance of its duty of care, has not been written out of the law. *Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded.*" (Italics added.)

The respondent's argument in this case amounts to rearguing the Tiller case, and reiterates the arguments advanced by Mr. Justice Frankfurter. There can be no doubt but that under the majority opinion it is error of a most serious nature to interject into a case, since 1939, the doctrine of assumption of risk, however disguised. There can be no doubt that since 1939 an employee cannot recover unless he pleads and proves negligence on the part of the employer. There can be no doubt that before and since 1939 the employer was and is not liable if the cause of injury is some hazard of the em-

ployment that reasonable care could not have protected against. While it may be generally true, therefore, that the employee "assumes" the risk of hazards not due to the employer's negligence, that does not mean that the jury should be so instructed. Even Mr. Justice Frankfurter recognized that the phrase "assumption of risk" is a highly ambiguous one, and that its use in instructions "is bound to create confusion," and that "it should therefore be discarded." That this is so seems obvious. The issues before the jury are whether the defendant was negligent, and whether such negligence proximately caused the injury. The mere fact that the risk was an ordinary or usual one is a false factor. As already pointed out, the real question is whether the risk to which the employee is subjected could be eliminated in the exercise of ordinary care. To interject into the case the thought that the employee assumes the risks of usual and ordinary dangers cannot help but confuse what otherwise would be a simple issue. When the jury is told that defendant can be held liable only upon proof of negligence, the defendant has received all of the protection to which it is entitled. To further tell the jury that the plaintiff assumes the risks of injury incident to his employment when the work is being done in the usual and ordinary way and without negligence on the part of defendant and that unless there was an unusual jerk out of the ordinary the jury must find for the defendant, is to assume that a "normal" jerk cannot be the result of negligence. That is not the law since 1939. What is ordinary may also be negligent. That issue was erroneously taken from the jury by the instruction.

The Tiller case has been frequently cited and its rule followed. (*Pratt* v. *Louisiana & A. Ry. Co.*, 135 F.2d 692; *Stewart* v. *Baltimore & O. R. R. Co.*, 137 F.2d 527; *Chicago Great Western Ry. Co.* v. *Peeler*, 140 F.2d 865; *Leet* v. *Union Pacific R. R. Co.*, 60 Cal.App.2d 814 [142 P.2d 37].)

■ There is another instruction that was clearly erroneous. At the request of defendant the jury was instructed that the defendant could be held liable only "upon proof which satisfies your mind that the plaintiff's injuries were proximately caused by some negligence upon its part." Of course, in a civil case the degree of proof is a preponderance of the evidence and not proof to the satisfaction of the jury. (Code Civ. Proc., § 2061.)

■ A somewhat similar error appears in another in-

struction on the burden of proof which, after correctly telling the jury that the happening of the accident creates no presumption of negligence, continues: ''Where the testimony leaves the matter uncertain and shows that any one of several things might have brought about an injury for some of which the employer is responsible and for some of which he is not, the jury is not left to speculate or to guess as to what the true cause of the accident was when there is no satisfactory foundation in the testimony for a conclusion.'' The use of the words ''satisfactory foundation'' might be confusing and should be avoided on the retrial.

The judgment appealed from is reversed.

Atteridge, J. pro tem., concurred.

WARD, J.—I concur. The opinion prepared by the Presiding Justice is based upon the decision of *Tiller* v. *Atlantic Coast Line R. R. Co.,* 318 U.S. 54 [63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967]. I do not think that opinion is logically sound (see concurring opinion in the Tiller case), although as a justice of a state appellate court I am bound thereby.

A petition for a rehearing was denied March 13, 1946, and respondent's petition for a hearing by the Supreme Court was denied April 11, 1946. Shenk, J., Edmonds, J., and Spence, J., voted for a hearing.