**SCRIMO v. CENTRAL R. R. OF NEW JERSEY et al.**

**No. 77.**

Circuit Court of Appeals, Second Circuit.

Nov. 29, 1943.

Donovan, Leisure, Newton & Lumbard, of New York City (Granville Whittlesey, Jr., Jerome H. Doran, and Lloyd F. MacMahon, all of New York City, of counsel), for appellants.

Alfred T. Rowe, of New York City (Anthony Sansone, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Upon verdict of a jury the plaintiff obtained a judgment for damages resulting from the death of Harry B. Murray, an employee of the defendants, who was killed during a switching operation in their railroad yard at Elizabethport, New Jersey. The defendants have appealed, assigning as

errors the denial of motions to dismiss the complaint and to direct a verdict in their favor and the giving and refusal of certain instructions.

The accident in which Murray met his death occurred about one o'clock on the morning of February 22, 1942. He was a member of a yard crew consisting of a conductor, an engineer, a fireman and three brakemen, of whom Murray was one. The switching operation in which he was employed involved moving a train of 20 cars in a westerly direction beyond a switch, then backing into track 6, and cutting off the four rear cars by pulling a cutting lever to open the coupling between the fourth and fifth cars. Murray was to give the necessary signals to another brakeman, Halsey, who relayed them to the engineer, and to pull the cutting lever. He walked close to the train on the north side of the track and, because the track curved slightly toward the south, Halsey took a position about a car's length to the northeast of him. It was too dark for Halsey to see Murray but he watched his lamp signals and passed them on to the engineer. He testified as follows: After Murray had thrown the switch into track 6, he gave the back-up signal; the cars were backed eastward at a walking speed; Murray kept giving the back-up signal until he gave the ordinary "kick" signal followed by the ordinary stop signal. Between these last two signals Murray was supposed to pull the cutting lever which lifts the lock pin in the coupler and permits the coupler to open. Just after Murray had given the stop signal and while the slack was running out Halsey saw Murray's lamp fall to the ground. Halsey ran to the spot and found Murray lying under the wheels at the east end of the fifth car from the end of the train. His right groin was on the north rail, his right leg was between the rails and his left leg and the rest of his body were on the north side of the rail. When the conductor arrived at the scene he asked Murray how the accident happened. Murray replied that he had stumbled. The fourth and fifth cars were still coupled together. They were put on one of the repair tracks and were inspected five or six hours later. It was then found that the cutting lever on the west end of the fourth car, a tank car, was defective in that sometimes it would open the coupling and sometimes it would not. When the coupling jammed the inspector could cause the lever to work by reaching in between the cars with his hand and shaking the lock pin.

◼ The trial judge instructed the jury that the Safety Appliance Act required the defendants to have cars equipped with devices which would enable a brakeman to couple and uncouple them without the necessity of going between the ends of the cars; and to give a verdict for the plaintiff they must find that there was a defective coupling device and because of its faulty condition Murray went between the cars in the performance of his work. The appellants contend that there was no evidence to support the jury's finding that Murray went between the cars. Whether he went between the cars was relevant to the determination of whether the defective coupling device was a proximately contributing cause of the accident. Although no one saw him do so, the inference that he did may reasonably be drawn from the position of his body under the wheels of the fifth car. This was a box car which had an overhang of more than two feet beyond the north rail. This gives additional reason for an inference that when he stumbled he was between the cars engaged in an effort to jiggle the lock pin of the defective coupling; otherwise it is difficult to imagine how a stumble could have carried him so far inside the overhang. We are satisfied that the evidence justified submission of the case to the jury and that its verdict must stand.

The defendants put in evidence their Safety Rule 203 of which Murray had a copy. This reads as follows: "Rule 203. In coupling or uncoupling cars the cutting levers must be used. If cutting lever or coupling device is inoperative, cars, locomotives or motors must be stopped, and slack permitted to run in or out before any attempt is made to adjust coupling device."

◼ The court charged that violation of the safety rules was not an issue in the case and they were not to be considered by the jury. Counsel for the defendants took an exception and asked the court "in furtherance of that situation to charge the jury that if the jury were to find that the violation of those rules which are in evidence was the proximate cause of the decedent's death, then their verdict would be for the defendants." This request was properly denied since contributory negligence or assumption of risk are no defense if a violation of the Safety Appliance Act contributes to the injury or death. 45 U.S.C.

A. §§ 53, 54; Chicago, G. W. R. Co. v. Schendel, 267 U.S. 287, 292, 45 S.Ct. 303, 69 L.Ed. 614. The appellants now urge that the jury should have been allowed to consider Rule 203 to support the drawing of an inference that he did not go between the moving cars to adjust the coupler; that they might reasonably infer that Murray, an experienced brakeman, would and did act in accordance with the rule. No argument for such a limited consideration of the rule was submitted to the trial judge. Had it been, he might well have modified to that extent his instruction that the safety rules need not be considered. But no such modification was requested.

Judgment affirmed.