# CORAY v. SOUTHERN PAC. CO.

No. 7382. Decided October 31, 1950. (223 P. 2d 819.)

2

See 56 C. J. S., Master and Servant, Sec. 422. Proximate cause as affected by Federal Safety Appliance Act, see note 96 A. L. R. 1138. See, also, 35 Am. Jur. 833.

*Rawlings, Wallace & Black, Dwight L. King,* and *Wayne L. Black,* all of Salt Lake City, for appellant.

*Ray, Quinney, & Nebeker,* Salt Lake City, for respondent. WOLFE, Justice.

This action was brought under the Federal Safety Appliance and Federal Employers' Liability Acts, 45 U. S. C. A. §§ 1, 8, 9, 51 and 53, by the appellant, ancillary administrator of the estate of William Frank Lucus, deceased, against the respondent railroad company to recover damages for the alleged wrongful death of Lucus occurring while in the course of his employment as a signal maintainer for the respondent. The case has been tried twice.

At the first trial, the trial court directed a verdict and entered judgment for the respondent which we affirmed on appeal. 112 Utah 166, 185 P. 2d 963. The Supreme Court of the United States granted certiorari, reversed the decision of this court and remanded the case for a new trial. 335 U. S. 520, 69 S. Ct. 275, 93 L. Ed. 208. Upon the second trial the jury returned a verdict of "no cause of action" against the appellant and judgment was entered accordingly. From that judgment the appellant prosecutes this appeal.

Briefly stated, Lucus' death occurred when the motor-driven track car operated by him and upon which he and one Alvin O. Lynch were riding, crashed into the rear end of a freight train which they were following on the respondent's mainline tracks near Lemay, Box Elder County, Utah. The train stopped abruptly and unexpectedly when the air in its brake lines escaped due to the threads of a triple valve on one of the cars being so badly worn that the nut on the valve became disconnected. It was a forced stop automatically occurring because of the defect in the triple valve and not an emergency stop imposed by the engineer. The track car was equipped with brakes by means of which it could have been stopped in time to have avoided the accident had Lucus or Lynch been looking in the direction they were traveling. The respondent does not contend that it did not violate the Safety Appliance Act, but asserts that Lucus was negligent in not keeping a proper lookout ahead and that such negligence was the sole proximate cause of his death. Respondent also contends that the deceased's wife who survived him suffered no pecuniary damage whatever by reason of Lucus' death.

The appellant assigns as error the giving of instruction no. 16 by the trial court. That instruction states:

"You are instructed that where an employee has two ways of perform-

ing an act in the course of his employment, the one safe and the other dangerous, he owes a positive duty to the employer to pursue the safe method, and any departure from the path of safety will prevent his recovery, if he is injured. Therefore, if you find that William Frank Lucus could have manipulated said motor car with equal ease from a position where he could have observed the freight train proceeding ahead of him, rather than a position with his back toward the freight train, but that he did not do so but manipulated said motor car with his back to the freight train, and if you find that manipulating said motor car with his back to the freight train was not as safe as manipulating said motor car facing the freight train and that William Frank Lucus thus chose an unsafe position, when a safe position was equally available to him, then William Frank Lucus, the deceased, was guilty of negligence, and if such negligence, if you so find, was the sole proximate cause of deceased's injuries and death, then your verdict must be for the defendant 'no cause of action.'

"The burden is upon the defendant to prove from a preponderance of the evidence that the negligence, if any, of William Frank Lucus was the sole proximate cause of his death."

It requires no argument to demonstrate that the above instruction is fraught with error. The first sentence of the instruction declares, in part, that where there is a safe and a dangerous way for an employee to perform an act in the course of his employment, he owes a positive duty to pursue the safe method. Perhaps that is true if the dangerous method is so palpably dangerous that an employee using reasonable care for his own safety would not choose that method. But if the danger is not palpable an employee at the time he acts may not know which method is the safer. It may be that only by hindsight can that question be determined. Certainly an employee does not bear the risk that the method he chooses may not in the end prove to be the safer method. The measure of an employee's duty is not that he choose the safest method available, but that he used reasonable care for his own safety.

The first sentence of the instruction is further objectionable in that it declares that *any* departure from the path of safety by an employee will prevent his recovery if he is injured. Such is not the law pertaining even in com-

mon law actions by an employee against his employer. Not every departure from the path of safety, however slight, renders an employee negligent as a matter of law. Furthermore, it must be remembered that this is an action brought under the Federal Employers' Liability Act in which a carrier has been charged with violating the Safety Appliance Act. Congress has declared that no employee who is injured or killed shall be held to have been contributorily negligent in any case where a violation of the Safety Appliance Act contributed to his injury or death.

Moving to the second sentence of the instruction, it is stated in substance that if Lucus could have operated the track car with equal ease and greater safety from a position where he could have observed the freight train proceeding ahead of him, but that instead of doing so, he operated the track car with his back to the freight train, he was guilty of negligence, which, if the sole proximate cause of his injuries and death, precludes his recovery. The difficulty with that statement is that the record is devoid of any evidence that Lucus operated the track car with his back to the freight train which was proceeding ahead of him. Lynch, who was riding on the track car with Lucus, testified at the trial below that the track car was proceeding in an easterly direction; that he was seated on the south side of the track car facing south and that Lucus was seated on the north side of the car facing north; that he (Lynch) was looking to the west, but that he did not know which way Lucus was looking; and that both men had their feet off the platform of the car and on a railing constructed around the edge of the car. Thus, if the men were in the position testified to by Lynch, Lucus at no time was seated with his back to the freight train but was seated so that by turning his head, he could have easily observed the whereabouts of the freight train. True, because Lucus did not have his back, but his side, toward the train, he may still

have been guilty of negligence. Whether under the law laid down by the Supreme Court of the United States, it leaves open the question of whether his negligence was the sole proximate cause or only a contributing cause in which latter case it could not count under the Safety Appliance Act, we shall later discuss.

The respondent contends, however, that instruction no. 16 when read as a whole is not erroneous and that when the jury read it in conjunction with instruction no. 5, they were properly instructed as to the law applicable. Instruction no. 5 informed the jury that the respondent was guilty of violating the Safety Appliance Act and that if they found "such violation proximately caused, in whole or in part," the death of Lucus, they should return a verdict for the appellant. That instruction also stated that if a violation of the Safety Appliance Act contributed to the death of Lucus, he could not be held to have been guilty of contributory negligence. We agree that instruction no. 5 correctly states the law applicable in actions arising under the Federal Employers' Liability Act in which a carrier is charged with violating the Safety Appliance Act. But we cannot agree that all of the errors in instruction no. 16 which we have heretofore pointed out are obviated when that instruction is read as a whole and in conjunction with instruction no. 5.

The appellant urges that instruction no. 16 is further erroneous in that it allowed the jury to find that Lucus' negligence, if any, was the *sole* proximate cause of his death. Appellant concedes that when an employee's own negligence is the sole proximate cause of his death, there can be no recovery. Only when a violation of the Safety Appliance Act "contributes in whole or in part" to his death is recovery allowed, and in such case the employee cannot be held to have been guilty of contributory negligence or to have assumed the risk. 45 U. S. C.

A. §§ 53, 54. However, the appellant argues that in the instant case there is no evidence from which the jury could have reasonably found that any negligence on the part of Lucus was the *sole* proximate cause of his death. In support of his contention, the appellant refers us to *McCarthy* v. *Pennsylvania R. Co.*, 7 Cir., 156 F. 2d 877, 881, certiorari denied, 329 U. S. 812, 67 S. Ct. 835, 91 L. Ed. 693, where it was contended, as by the respondent in the instant case, that an employee's own negligence was the sole proximate cause of his death. There the plaintiff's decedent was killed when the locomotive on which he was the engineer turned over when the pony trucks on the right side of the engine broke down after having developed a hot box. The engineer was aware of the hot box, but despite repeated warnings and the conductor's order to change engines, he continued to operate the defective engine. Upon the trial of a wrongful death action brought by the administrator of his estate under the Safety Appliance and Federal Employers' Liability Acts, the jury returned a verdict of "no cause of action." The administrator appealed and gained a reversal of the cause. The court stated:

"The defendant's answer tendered the issue that the sole proximate cause of the accident was the fact that the decedent continued to use the locomotive after he knew of its defective condition and failed to report it as was his duty under the rules. These acts constitute no defense. *The decedent's acts were all concurring acts with the act of the defendant in violation of the statute,* and were either acts of contributory negligence or assumption of the risk of known danger, from both of which, as we have pointed out, the decedent had been relieved by the statute. '* * * But where, as in this case, plaintiff's contributory negligence and defendant's violation of a provision of the safety appliance act are concurring proximate causes, it is plain that the employers' liability act requires the former to be disregarded.' *Spokane & Inland Empire R. Co.* v. *Campbell,* 241 U. S. 497, 510, 36 S. Ct. 683, 689, 60 L. Ed. 1125. See also *Louisville & Nashville R. Co.* v. *Wene,* 7 Cir., 202 F. 887, 892." (Italics added.)

In the *McCarthy* case, as in the instant case, the court instructed the jury that if the decedent's death was caused solely by his own negligence independently of any violation

of the Safety Appliance Act by the railroad, it must return a verdict for the railroad. The court declared that "the instruction is improper" because it told the jury that the plaintiff could not recover if his decedent was guilty of acts of negligence that solely caused his death. As an abstract proposition of law, that is correct, but there was no evidence of any independent acts of negligence by the decedent that were the sole cause of the accident and his death. The court had instructed on a proposition of law about which there was no evidence.

"This was bound to confuse and mislead the jury into believing that the concurring acts of the decedent in continuing to use the defective locomotive after he knew it was defective, and not reporting it, might be considered as acts of negligence, for which the decedent might be charged with sole liability for the accident. The giving of such instruction under such circumstances was error."

Another case cited by the appellant in which it was held that under the evidence, a railroad employee's injury resulted from negligence on his part concurring with a violation of the Safety Appliance Act by the railroad, is *Grand Trunk Western Ry. Co.* v. *Lindsay,* 233 U. S. 42, 34 S. Ct. 581, 582, 583, 58 L. Ed. 838. There the plaintiff, a switchman, was injured when he entered between two railway cars for the purpose of remedying a defective coupler which had failed to perform its function. There was evidence tending to prove that he had entered between the cars before they had entirely stopped and that he had signaled the engineer to come ahead just as he stepped in. On the other hand, there was evidence that the engineer moved the train up in response to a lantern signal given by someone other than the plaintiff. The Supreme Court stated:

"But having regard to the state of the proof as to the defect in the coupling mechanism, its failure to automatically work by impact after several efforts to bring about that result, all of which preceded the act of the switchman in going between the cars, *in the view most favorable to the railroad, the case was one of concurring negligence;* that is, was

one where the injury complained of was caused both by the failure of the railroad company to comply with the safety appliance act and by the contributing negligence of the switchman in going between the cars." (Italics added.)

See *Aly* v. *Terminal R. Ass'n of St. Louis*, 342 Mo. 1116, 119 S. W. 2d 363, for an additional example of an injury resulting from concurring causes.

Roberts in his text, Federal Liabilities of Carriers, Sec. 89, states:

"The [Federal Employers' Liability Act] does not attempt to legislate upon the purely logical problem of determining the cause or causes of injury, but directs its mandate toward the problems of fixing liability for the injury. Logic may conclude that the injury resulted from the negligence of the employer, the employee's own want of care, the default of a stranger to the employment, an act of God, or a pure accident, or from a combination of any or all of these factors. But after logic has thus determined the causal basis of the injury, the statute steps in to say that if, among these causes, there is negligence on the part of the employer, as that term is understood in the act, liability of the employer shall follow, irrespective of the other factors casually related in whole or in part from negligence, even if the negligence of the injured employee or some other factor was logically nearer to, or more influential in producing that injury. In the words of Mr. Justice HOLMES: 'We must look at the situation as a practical unit, rather than inquire into a purely logical priority.' "

The court in *Eglsaer* v. *Scandrett*, 7 Cir., 151 F. 2d 562, 565, after quoting with approval the above text from Roberts, declared that:

"Under the old concept of proximate cause, that cause must have been the direct, the complete, the responsible, the efficient cause of the injury. * * *

"The words 'in part' have enlarged the field or scope of proximate causes—in these railroad injury cases. These words suggest that there may be a plurality of causes, each of which is sufficient to permit a jury to assess a liability. If a cause may create liability, even though it be but a partial cause, it would seem that such partial cause may be a producer of a later cause. For instance, the cause may be the first acting cause which sets in motion the second cause which was the immediate, the direct cause of the accident."

See *Grimm* v. *Chicago & N. W. Ry. Co.*, 331 Ill. App. 601, 73 N. E. 2d 920, 922, where the Appellate Court of Illinois

held upon the authority of *Eglsaer v. Scandrett,* supra, that it was proper under the Federal Employers' Liability Act to instruct the jury that if the railroad was negligent and that such negligence "contributed in whole or in part to cause plaintiff's injuries" he could recover, omitting entirely the words "proximate cause" from the instruction.

Admittedly, the cases and the text discussed above lend support to the appellant's contention that in the instant case the jury could not have reasonably found that Lucus' negligence, if any, was the sole proximate cause of his death. The author of this opinion concludes that the sudden stopping of the train and the failure of the deceased to keep a proper lookout ahead were so closely related in time and in space as to make the violation of the Safety Appliance Act by the respondent railway company a proximate cause of Lucus' death as a matter of law, and that a jury could not, without being arbitrary, single out Lucus' negligence and brand it as the sole proximate cause of his death. This is not a case where a disabled train had been left standing on the track for any substantial length of time and then had been run into by a track car. On the contrary, in the instant case the sudden and unexpected stopping of the train and the resulting crash were separated only by a matter of moments. As stated by the writer in his concurring dissenting opinion when this case was here on appeal the first time, " the stopping of the train and the impact of the immediately following track car are bound together in point of time and event as a unit happening." [185 P. 2d 972.] Because the accident could have been avoided by Lucus had he been looking in the direction he was traveling, does not argue that his negligence could be reasonably found by a jury to be the sole proximate cause of his death. If so, the negligence of a workman who enters between two cars to aid a faulty coupling and is injured while there, could be considered the sole proximate cause.

The character of the negligence is not material. True, in the coupling case the negligent conduct was intended to benefit the carrier while here, the negligence of Lucus bore no relation to anything beneficial to the carrier. In fact, quite the contrary, for his negligence benefited neither himself nor the carrier, but under the Safety Appliance Act the contributory negligence of a workman injured by the occurrence of a failure in an appliance, is of no consequence regardless of the character or purpose of the act in connection with which the contributory negligence occurs.

However, a majority of this court are of the opinion that a jury could reasonably find that Lucus' negligence was the sole proximate cause of his death. When this case was before the Supreme Court of the United States this question of whether the violation of the Safety Appliance Act was in law a proximate cause of Lucus' death was not before that court for decision. All that was before that court was whether we had erred in our former decision in holding that the violation of the Safety Appliance Act by the railroad was not in law a proximate cause of Lucus' death. The Supreme Court held that we had erred.

It is true that the Supreme Court of the United States [335 U. S. 520, 69 S. Ct. 277] in its opinion declared that the circumstances leading up to Lucus' death were "inseparably related to one another in time and space." Isolating that statement from its context, it can be argued that the Supreme Court must have necessarily by implication held that Lucus' negligence could not reasonably be found by a jury to be the sole proximate cause of his death. However, taking the opinion as a whole, we believe that the Supreme Court did not intend to express any opinion as to whether it could be held as a matter of law that the violation of the Safety Appliance Act was a proximate cause

of Lucus' death since that question was clearly not before it for decision.

In January of 1943, Edith Lucus, wife of the decedent, was awarded separate maintenance by a California court. The decedent was ordered to pay ten dollars per week for her support commencing February 1, 1943, but he failed during his lifetime to make any payments whatever. No further court proceedings were had and Edith Lucus neither saw nor heard from her husband in his lifetime after January of 1943. She made continuous efforts to ascertain his whereabouts, but was unable to learn anything until May of 1944 when she was notified of his death.

Both the appellant and the respondent are in agreement, and the court so instructed the jury in its instruction no. 11, that Edith Lucus was entitled to recover "the loss of pecuniary benefits" which she might have reasonably expected to receive from the deceased during her lifetime had he not been killed. *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417. However, the jury was further instructed on the subject of damages by instruction no. 9 that:

"You are instructed that the mere fact that Edith Lucus was the legal wife of Frank Lucus at the time of his death is not sufficient evidence to prove that the plaintiff is entitled to recover any damages for his death in this action. If you believe from all the evidence in the case that the deceased would not have made any further money contributions to Edith Lucus or would not have supported her in the future if he had not died, then your verdict should be for the defendant."

The appellant contends that instruction no. 9 was erroneous and prejudicial because it failed to inform the jury that in determining Edith Lucus' loss of pecuniary benefits, it could consider the involuntary as well as the voluntary benefits which she might have reasonably expected to receive from her husband. By the term, "involuntary benefits," the appellant has reference to any amounts which

Mrs. Lucus might have exacted from the deceased through the enforcement of the decree of separate maintenance. Respondent asserts that while instruction no. 9 does not contain express mention of involuntary benefits, they are necessarily included within the general term, "pecuniary benefits," which the court used in its instruction no. 11.

While the instruction is not as explicit as it could have been made, we do not think that it constitutes reversible error in itself. The words employed in the last sentence of the instruction, to wit: "would not have made any further money contribution to Edith Lucus or would not have supported her in the future" are susceptible of giving a jury composed of laymen the impression that it was wholly a matter of choice with the deceased whether he contributed to his wife's support. The instruction makes no mention of the probability that at some future date Mrs. Lucus might have taken steps to compel her husband to support her. As long as Lucus remained alive, there was a possibility that he might have made some voluntary payment according to the separate maintenance decree and a probability that he could have ultimately been required to pay in accordance with it. A jury might well find that this contingency was of value to Mrs. Lucus and that the extinguishment of that contingency by the death of Lucus was an element of her damage. The nature of the contingency was not only one of chance that he might voluntarily pay her support money. It also contained the element of forcing payment on his part. This latter element is slighted in an instruction which might be interpreted as making the contingency of her obtaining anything purely a matter of his willingness to pay.

It is very likely that in his argument to the jury, counsel for the appellant pointed out and stressed the fact that had Lucus lived, his wife might have taken steps toward compelling him to support her. For this reason, it is doubtful

that the jury took instruction no. 9 to mean that Mrs. Lucus could not recover any damages if they believed that had Lucus lived, he would not have voluntarily supported her. But in actions of this kind where a husband is not voluntarily supporting his wife at the time of his death, it would be a salutary practice to make the instruction as to the elements which enter into the measure of the wife's recovery explicit in this regard and not trust to argument of counsel, which may be forgotten by the jury, to make clear what is meant by the instruction.

A more balanced instruction could have been had by adding words to instruction no. 9 to the effect that Lucus could have been compelled by his wife to contribute to her support. This could have been partly achieved, at least, by amending the last sentence of the instruction to read:

"But in determining the loss of pecuniary benefits which the plaintiff might reasonably have expected to receive from the deceased during her lifetime had he not been killed, you should take into consideration such amounts as the deceased might have voluntarily paid toward the support of Mrs. Lucus and such amounts as you find she might reasonably have obtained by resorting to the processes of the law."

The judgment below is reversed and a new trial is ordered. Costs to the appellant.

McDONOUGH, J., concurs.

WADE, Justice (concurring in the result).

I agree that giving of instruction no. 16 was, for the reasons stated in the other opinions, prejudicial error. I also think that to create liability the defective equipment must proximately cause the accident and that the evidence is not sufficient to sustain a holding as a matter of law that the defective equipment was at least one of the proximate causes of the accident, but the jury might find that the decedent's negligence was the sole proximate cause of his death.

As I understand the decision of the U. S. Supreme Court in this case in 335 U. S. 520, 69 S. Ct. 275, 93 L. Ed. 208, it held that plaintiff could recover only "if this defective equipment was the sole or a contributing *proximate* cause of the decedent employee's death" and that the evidence on that question presented a jury question. I believe that the evidence is such that the jury might find that the defective brakes only remotely, not proximately, caused decedent's death. But to so find they would have to be convinced that decedent's negligence was more than a mere contributing or concurring proximate cause of his death. It would require a finding that decedent's negligence was an intervening cause entering the picture after the effect of the defective appliance on the operation of the train had been expended. The U. S. Supreme Court in its opinion on this case emphasizes that the defective brakes caused the train to stop suddenly and unexpectedly. There is nothing in the opinion which indicates that the court would have held it to be a jury case had the train been stopped as it was and remained standing on the track for a considerable length of time in full view of decedent as he approached on the track car. So unless the jury believes that the fact that the train stopped suddenly and unexpectedly was a contributing factor in causing the accident in addition to the mere fact that the train was standing still on the track as the track car approached then I think they should find that that decedent's negligence was the sole proximate cause of his death and the defective appliance did not proximately contribute thereto. Of course, if the train stood on the track for a long period of time prior to the accident then the defendant might have proximately contributed to the accident by neligence in not giving decedent appropriate warning that it was so standing, but that question was not an issue in this case. So I conclude that unless the jury finds that the suddenness and unexpectedness of the stap played an active part in causing this accident, then they

should find that it was not proximately caused by the defective brakes.

LATIMER, Justice.

I concur in the result.

My reason for not concurring outright is that I believe the question of whether deceased's negligence was the sole proximate cause of his death should be submitted to the jury for determination.

PRATT, Chief Justice (concurring in part and dissenting in part).

The Supreme Court of the United States in holding that it was error to direct a verdict for the defendant in this case said, 335 U. S. 520-524, 69 S. Ct. 277:

"Their airbrakes were defective; for this reason alone the train suddenly and unexpectedly stopped; a motor track car following at about the same rate of speed and operated by an employee looking in another direction crashed into the train; all of these circumstances were inseparably related to one another in time and space. The jury could have found that decedent's death resulted from *any or all* of the foregoing circumstances." (Italics added.)

The words "any or all" justify the conclusion that that court believed the question of sole proximate cause was one for the jury. We, of course, are bound to follow that Supreme Court decision. The jury might, if it believed the evidence justified such a conclusion, find any one of the above sets of circumstances the cause of the death—and, we can reasonably conclude that they found that following the train upon a track-car without looking where he was going, was the sole cause of his death, as they found a "no cause of action" verdict.

In its discussion of instruction no. 16, however, I think the prevailing opinion has over-emphasized an abstract interpretation of the wording. I know of no more careless way of driving the track-car, or any vehicle, for that

matter, than driving in one direction and looking in another. It seems to me that it is so "palpably dangerous that an employee using reasonable care for his own safety would not choose that method"—borrowing the expression of the prevailing opinion. To reason that one driving behind a train, but not looking where he was driving, might not know that it was dangerous to do so, is to attribute to that driver an intelligence considerably below normal in this mechanical age. The prevailing opinion attacks the reference to driving of deceased "with his back to the freight train" as not supported by the evidence. It is true that in this trial, as distinguished from the first one, the testimony does not expressly state that he had his back to the train; but the record does show that the witnesses in the trial court in open court demonstrated what they meant as to his position, and that demonstration is not described in words in the record. It seems clear, however, that all witnesses agree the two on the track-car were not looking where they were going. The actual position of their backs was immaterial—it was a question of whether or not they were keeping a proper lookout to protect themselves. Their failure to do so is what excited the men in the caboose of the train who tried to attract their attention in time to prevent the collision. I do not believe the jury was misled in any way by the instruction; nor was it prejudicial to plaintiff under the circumstances.

Now to the separation agreement. Mrs. Lucus, when on the witness stand, testified that she was positive that her husband would return to her some day—that she was keeping up the home with that thought in mind. It does not appear from the evidence that she contemplated ever trying to force him to live up to the decree of separate maintenance. To incorporate that thought in an instruction, then, would be to submit a question to the jury without evidence to support it. The decree of separate maintenance did not require Mrs. Lucus to insist upon its enforcement. The

theory of the case was that Mr. Lucus would return. The court instructed upon future expectations and that was sufficiently detailed to cover the case absent proof of an intent to force payments from him.

The judgment should be affirmed.