## McGOWAN v. DENVER & R. G. W. R. CO.

No. 7683.   Decided May 14, 1952.   (244 P. 2d 628.)

588

See 57 C. J. S., Master and Servant, sec. 524. Federal safety appliance act. 35 Am. Jur., Master and Servant, secs. 228 et seq.

*W. Q. Van Cott, Grant H. Bagley, Sid N. Cornwall, Dennis McCarthy* and *Clifford L. Ashton,* Salt Lake City, for appellant.

*Brigham E. Roberts, Wayne L. Black,* Salt Lake City, for respondent.

WADE, Justice.

The defendant, Denver & Rio Grande Western Railroad Company appeals from a judgment on a jury's verdict awarding plaintiff, Will J. McGowan, respondent herein, damages for the loss of part of his big toe in a car coupling accident. The action was based on a violation of the Federal Safety Appliance Act and the Federal Employers' Liability Act, making railroads liable to their employees for damages sustained from injuries proximately caused in whole or in part by a violation of the Safety Appliance Act and providing that no such employee "shall be held to have been guilty of contributory negligence."[1] Defendant

"It shall be unlawful for any common carrier * * * by railroad to * * * permit to be * * * used on its line any car * .* * not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 51 of that act provides:

"Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury or death resulting in whole or in part * * * by reason of any defect or insufficiency, due to its negligence, in its cars, * * * appliances, machinery * * * or other equipment."

Section 53 of that act provides:

"* * * *Provided,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

---

[1] 45 U. S. C. A. § 2 provides:

contends (1) that the court erroneously instructed the jury, (2) that the evidence does not sustain a finding that the Safety Appliance Act was violated, and (3) that the court erroneously excluded evidence which defendant claims would show that plaintiff's negligence was the sole proximate cause of his injuries.

The accident occurred in the Denver & Rio Grande Western Railroad Company's yards at Cameo, Colorado in the afternoon of April 15, 1950, in coupling a Denver & Rio Grande coal car to a Grand Trunk Western Railroad Company box car. The box car was stationed on the side track while an engine facing westerly with the coal car coupled to its rear was backing easterly to make the coupling. Plaintiff was directing that operation from a point north of the side track and about eight feet west of the west end of the box car.[2] Plaintiff testified that as the east end of

[2]At the trial and the argument on appeal the defendant brought into the court room an exhibit of two couplers of the same types as the ones involved in the accident. They were mounted on simulated car ends and a track to demonstrate workings of the couplers. These couplers were made in accordance with the standard specification for the types of couplers involved in the accident.

The coupling mechanism extends outward from the center of each end of the car. The drawbar, which is a part of the coupler, is a heavy piece of cast steel, anchored under the sill and beyond the car's end it enlarges into a head with a jaw on each side and a knuckle on the right side which swings on a pivot. When two couplers come together these knuckles mesh and close hooking around each other and are locked together by the coupler pins sliding into a locking position. The couplers are unlocked and the knuckles opened by a lever, attached thereto, and anchored on the right hand side facing outward from the end of the car, without any person going between the cars but there is no such lever on the opposite side. The drawbar is supported at the outer end of the car by a heavy piece of steel called the carrier arm across which it moves laterally from side to side from two to two and one-half inches each way from center at the carrier arm to allow for rounding curves without derailment. A longer car requires a greater lateral movement than a shorter one and the outer end of the coupler moves farther laterally than it does at the rocker arm. There is no mechanism provided to adjust the

the coal car approached him he noticed that the moving coal car's drawbar was so far out of alignment toward him that without adjustment, it would not couple on impact so he shoved it with his right foot moving it slightly but not enough, that he then gave the engineer and unheeded stop signal and shoved the drawbar again still not moving it enough, so he shoved it again this time moving it enough so that it coupled on impact, crushing his toe between the knuckles.

It is necessary to have in mind what facts are required to prove a violation of the Safety Appliance Act. The claim that the jury was erroneously instructed deals with such facts so we will consider that claim first.

The court's instructions authorized the jury to find a violation of the Act if they concluded that the coupler would not have coupled automatically upon impact without plaintiff going between the cars, which is the effect of the following instructions when considered together. Instruction No. 3 says:

"If you find from a preponderance of the evidence that on the occasion when plaintiff was injured the couplers on the two cars would not have coupled automatically upon impact without the necessity of plaintiff going between the cars, then the defendant is guilty of a violation of the Safety Appliance Act,

Instruction No. 4 says:

"You are further instructed that it was the duty of the defendant company to require on the two cars in question couplers that would couple automatically upon impact without the necessity of plaintiff going between the cars."

drawbar alignment from the side of the car but some cars are equipped with a rocker type carrier arm which turns up on each end thus causing the drawbar when not caught to gravitate toward the center.

Instruction No. 5 says:

         *        *        *        *        *

"* * * if, in order to effect an automatic coupling by impact, it was necessary for plaintiff to adjust the drawbar or *coupling mechanism* with his hands or feet, then there would be a violation of the Safety Appliance Act by the defendant in not having the type of coupler required by the Act." (Italics added.)

Instruction No. 7 says:

"The Safety Appliance Act * * * requires * * * couplers which will couple automatically by impact without the necessity of men going between the cars and the fact that some lateral motion in the coupler mechanism is necessary in the operation of defendant's trains does not relieve the defendant from the requirements of said Act."

Defendant contends that the statute requires a finding that the couplers were defective or in bad condition in order to establish such violation. It argues that no device has ever been invented, or ever will be, which will align drawbars without a person going between the cars and that no coupler will function automatically unless the knuckles are properly set. It quotes the Supreme Court of the United States in *Affolder* v. *New York, Chicago & St. Louis R. R. Co.*, 339 U. S. 96, 99, 70 S. Ct. 509, 511, 94 L. Ed. 683, that

"if 'the failure of these two cars to couple on impact was because the coupler * * * had not been properly opened', the railroad had a good defense",

which shows clearly that the mere failure to couple automatically upon impact does not conclusively show a defective coupler.

From the fact that plaintiff's foot was crushed between the knuckles, defendant argues that it is clear that he was opening the knuckle of the moving car and not aligning the drawbar when the accident occurred. If such is the fact the *Affolder* case, supra, makes it clear that plaintiff was not entitled to recover.

Plaintiff's testimony was positive, and not expressly denied, that the knuckles were opened and that he was aligning the drawbar. There was no lever on the left hand or plaintiff's side of the moving car by which the knuckle could be opened without going between the ◼ cars but he could have stepped back a few feet and opened the knuckle of the standing car by manipulating the lever on its right hand side. With one knuckle opened and the drawbars properly aligned the coupling would be made even though the other knuckle is closed. The fact that plaintiff went in between the cars is evidence that he thought that it was necessary to do so in order to effect a coupling, for realizing the danger, he would not unnecessarily go between the cars to make a correction. Of course the drawbars must be aligned closer to couple with only one knuckle opened than where both are opened. It would not be improbable that plaintiff placed his foot against the open knuckle to adjust the drawbar alignment, for pushing against the open knuckle since it turns toward him and is farther from the drawbar anchorage would give him a better footing and greater leverage in pushing the drawbar back into alignment, than pushing against the side of the drawbar. But since plaintiff is an interested witness and the only person who knows the facts on that question, the jury could reasonably find contrary to his testimony that he was aligning the drawbar though it is supported by the above circumstances.[3]

Instruction No. 5, states that

*"if it was necessary* for plaintiff to adjust the drawbar or *coupling mechanism* with his hands or feet"

there was a violation of the act. (Emphasis added.) Since the coupling was actually made there were no other reasons for the claim that it would not have coupled had plaintiff failed to go between the cars except that the drawbar was

---

[3]*Smith* v. *Ind. Comm.*, 104 Utah 318, 140 P. 2d 314.

misaligned or the knuckles closed. So the emphasized words "coupling mechanism" could be construed to refer to opening the knuckle. But the instructions only authorized a finding that the Act had been violated if the jury found that it was *necessary* for plaintiff to go between the cars in order to effect an automatic coupling. Since one coupler could be opened without the necessity of plaintiff going between the cars and even with the other knuckle closed, the coupling would have been made, with proper drawbar alignment, going between the cars would be necessary only to adjust the alignment, so under these instructions plaintiff could recover only if it was necessary to make that adjustment.

While it would have been better to have submitted the issue to the jury of whether plaintiff adjusted the drawbar or merely opened the knuckle, defendant made no such request nor was that point ever raised at the trial or argued on this appeal. Defendant merely excepted generally to each of the above instructions as a whole and to each paragraph thereof without specifying any grounds therefor. It argues here, not that such issue should have been submitted to the jury or that such instructions require a verdict for plaintiff if he merely opened the knuckle, but that the instructions were erroneous because they authorized a verdict against defendant merely on a finding that the coupling would not have been made had plaintiff failed to go between the cars without requiring a further finding that the coupler was defective or in bad condition. Under this state of the record, defendant cannot complain that this issue was not submitted or that the instructions might have been construed to allow a verdict against it if the jury believed that plaintiff was merely adjusting the knuckle.

Under the latest decisions of the United States Supreme Court, which is the court of last resort on this question, such failure was not error. In *O'Donnell* v. *Elgin, J. & E.*

*R. Co.*, 338 U. S. 384, 389, and 394, 70 S. Ct. 200, 203, 94 L. Ed. 187, in discussing whether negligence is a necessary element of liability under the Safety Appliance Act, where the coupler broke after being coupled, the court, through Mr. Justice Jackson, said:

"We hold that the Safety Appliance Act requires couplers which, after a secure coupling is effected, will remain coupled until set free by some purposeful act of control.

"What then should a jury be instructed is the consequence of a failure to provide couplers that so perform? Should the jury be instructed that it must find liability or merely that it may find liability for injuries proximately resulting from the failure?

\*     \*     \*     \*     \*

"\* \* \* As to the claim based on the Safety Appliance Act, we hold that the plaintiff was entitled to a peremptory instruction that to equip a car with a coupler which broke in the switching operation was a violation of the Act, which rendered defendant liable for injuries proximately resulting therefrom, and that neither evidence of negligence nor of diligence and care was to be considered on the question of this liability."

In *Carter* v. *Atlanta & St. Andrews Bay Ry. Co.*, 338 U. S. 430, 433 and 434, 70 S. Ct. 226, 229, 94 L. Ed. 236, that court, by Mr. Justice Clark, said:

"Since 1893 the Congress has made it unlawful for a railroad company such as respondent to use any car on its line 'not equipped with couplers coupling automatically by impact.' This Court has repeatedly attempted to make clear that this is an absolute duty not based upon negligence, and that the absence of a 'defect' cannot aid the railroad if the coupler was properly set and failed to couple on the occasion in question. \* \* \*"

And in *Affolder* v. *New York, Chicago & St. Louis R. Co.*, supra, again through Mr. Justice Clark, the court said:

"\* \* \* Respondent took the position that the criterion of the Act is, 'were they [the cars] equipped with efficient couplers?' and not 'did they [the couplers] in fact fail to couple?'; \* \* \*.

\*     \*     \*     \*     \*

"Nor do we think that any question regarding the normal efficiency of the couplers is involved in an action under the Safety Appliance Acts. As we said in *O'Donnell* v. *Elgin, Joliet & Eastern R. Co.*, 1949,

338 U. S. 384, 70 S. Ct. 200, 94 L. Ed. 187, and the *Carter* case [*Carter* v. *Atlanta & St. Andrews Bay R. Co.*, 338 U. S. 430, 70 S. Ct. 226, 94 L. Ed. 236], supra, the duty under the Acts is not based on the negligence of the carrier but is an absolute one requiring performance 'on the occasion in question.'

"The Court of Appeals [8 Cir., 174 F. 2d 486] based its disposition of the case on the reasoning that the charge given the jury contained 'no explanation of the legal effect' of the direct proof of the separation of the cars 'and the permissible use which the jury could make of it * * *' We think the Court of Appeals erroneously concluded that the jury could find for the plaintiff only if it inferred 'bad condition of the couplers and consequent violation of defendant's statutory duty * * *.' This was the same error the Court of Appeals for the Seventh Circuit made in *O'Donnell,* supra [171 F. 2d 973], in an opinion relied upon by respondent in the present cause. In subsequently reversing the judgment of the Court of Appeals, we held that the plaintiff did not have to show a 'bad' condition of the coupler; she was entitled to a peremptory instruction that to equip a car with a coupler which failed to perform properly 'in the switching operation was a violation of the Act, which rendered defendant liable for injuries proximately resulting therefrom, * * *' Further, we said, 'a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong * * *.'"

"Of course this assumes that the coupler was placed in a position to operate on impact. Thus, if 'the failure of these two cars to couple on impact was because the coupler on the Pennsylvania car had not been properly opened', the railroad had a good defense."

These cases hold that under the Safety Appliance Act a plaintiff does not have to show a defective or bad condition of the coupler but is entitled to a peremptory instruction that the failure of the coupler to perform properly is a violation of the Act which renders the defendant liable for all injuries proximately resulting in whole or in part from such failure to perform, which is itself an actionable wrong.[4] However, such liability is

[4]*San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110; *Chicago R. I. & P. R. Co.* v. *Brown,* 229 U. S. 317, 33 S. Ct. 840, 320, 57 L. Ed. 1204, 1209, 3 N. C. C. A. 826, to the effect that the failure of a coupler to work at any time sustains a charge that the act has been violated.

defeated if the failure resulted from closed couplers, or possibly if the failure results from some intervening or independent cause other than inadequacy or defectiveness.[5]

"7. We do not say that a railroad may never effectively defend under the Act by showing that an adequate coupler failed to hold because it was broken or released through intervening and independent causes other than is inadequacy or defectiveness such, for example, as the work of a saboteur. And we do not find it necessary to consider a situation where an adequate coupler failed to hold because it was improperly set, since such facts are not before us."

While the above cited cases involve negligence which is slightly different from that urged here, that the jury must find defective or bad equipment as well as a failure to function in order to find for plaintiff, those cases require a peremptory instruction that a functional failure, absent a showing that the failure was caused by closed knuckles or other inadequacy or defectiveness, constitutes a violation of the Act. Here, plaintiff's only ground for recovery is that the drawbar was misaligned. Whether such cause shows defective equipment is a question of law for the court. If such defects show defective equipment, we cannot reverse on the grounds urged.

Defendant urges that since the drawbar which plaintiff claims he adjusted is equipped with a rocker type carrier arm, which is the latest equipment known for making such adjustment automatically, it would be unreasonable to hold it liable on account of such misalignment. That such failure is the same as a failure because the knuckles are closed and is merely a failure because the drawbars are not set for coupling. How far off center a drawbar must be to prevent coupling depends on a number of things, among

---

[5]In *O'Donnell* v. *Elgin,* supra, the court, through Mr. Justice Jackson in note 7 said:

them the alignment of the other drawbar and if and how wide opened the knuckles are.

Plaintiff's testimony was not disputed that in switching operations even on straight and level tracks a drawbar sometimes becomes misaligned so far that without making an adjustment by going between the cars it will not couple. A number of defendant's witnesses testified that in switching the drawbar alignment sometimes gets so far off center that they will not couple without an adjustment being made by going between the cars and one of them said that the cars are usually stopped to make such adjustments and sometimes the use of a bar is required. There was no evidence that the rocker type carrier arm always eliminates the occurrence of such misalignment or that it never occurs where the lateral movement is no greater than is required for rounding curves.

If plaintiff's evidence is sufficient to support a finding that the drawbar was too far out of alignment to couple upon impact without being adjusted, then there was a jury question. There are two differences between the failure to couple on account of closed knuckles and failure on account of misalignment of the drawbar, (1) the knuckles are purposely opened and closed but the drawbar unintentionally gets out of alignment in switching operations, and (2) a lever is provided on the right side of each end of the car whereby the knuckle can be opened without going between the cars. That failure to couple automatically upon impact on account of a misalignment of the drawbars is sufficient to sustain a finding of a violation of the act has been many times held by the courts. See *San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110, 1117; *Atlantic City Ry. Co.* v. *Parker,* 242 U. S. 56, 37 S. Ct. 69, 61 L. Ed. 150; *Chicago, St. P. & O. Ry. Co.* v. *Muldowney,* 8 Cir., 130 F. 2d 971; *Geraghty* v. *Lehigh Valley R. Co.,* 2 Cir., 70 F. 2d 300; *Hampton* v. *Des Moines & C. I. R. Co.,* 8 Cir., 65 F. 2d 899;

*Kansas City M. & O. Ry. Co.* v. *Wood,* Tex. Civ. App., 262 S. W. 520; *White* v. *Atchison, Topeka & Santa Fe Ry. Co.,* Mo. 1951, 244 S. W. 2d 26; *Donnelly* v. *Pennsylvania R. Co.,* 342 Ill. App. 556, 97 N. E. 2d 846.

The finding that the couplers would not have coupled automatically on impact had plaintiff not adjusted the alignment, is sustained by the evidence. In support of its contrary contention defendant relies on *Kansas City M. & O. Ry. Co.* v. *Wood,* Tex. Civ. App., 262 S. W. 520, 523 where in discussing a similar problem, the court said:

"Wood's testimony that the drawbar of the standing car was only slightly out of line towards him, that it was tight, and that when the impact came it 'took the drawbar away from my foot,' strongly indicates that he had not pushed it over prior to the time of the impact. If he had not it is clear that the coupling would have taken place without his going between the cars, and his statement that it was necessary for him to go between the ends of the cars and adjust the drawbar before they would couple resolves itself into an opinion which was contradicted by the facts, because it did couple. In other words, plaintiff's right of recovery on this issue is based upon his opinion formed upon an observation made at the very instant of impact of the cars, and in a time too short for him to remove his foot from the coupler, that the drawbar of the moving car was too far out of line for it to couple, when the physical facts are that it did couple not only then, but thereafter. There is no proof other than this of any defects whatever in the couplers in question, mechanically or otherwise, and nothing to support plaintiff's contention save his own observations and opinion as to what would have happened had he not gone between the cars. This, we think, is leaving the domain of fact and invading the realm of fancy, and is too meager to sustain a recovery against appellant."

There the plaintiff's testimony was much weaker than it is here. In that case there was another eye-witness who positively denied that the drawbar was misaligned, there plaintiff testified that he did not observe the misalignment until the very instant of impact after it was too late to withdraw his foot, that the drawbar he pushed against was tight and he did not testify that he pushed the drawbar

but that the impact took the drawbar away from his foot in the direction he was pushing, causing it to slip in between the couplers. From this evidence the court concluded that he had no time to see if there was a misalignment in time to correct it and that the physical facts showed that he did not move the drawbar prior to the impact and still it coupled. Here there was no such weakness in plaintiff's testimony, his testimony was uncontradicted, he was a man of eight years of switching experience, he watched the car come slowly to where he stood and had plenty of time to observe the drawbar alignment both before and after he pushed it with his foot for he pushed it three times and claims he finally moved it enough so that it did couple. Plaintiff's testimony that the couplers would not have coupled had he failed to adjust the drawbar alignment, since the coupling was made, was opinion evidence, but his testimony indicated no doubt in his mind whatever that such was the fact. No reason is shown why a man of eight years of experience with his opportunity to observe could not form an accurate opinion on such question. Opinion evidence is relied on every day in all courts on matters much more apt to be inaccurate than this. It was not unreasonable to make such a finding on this evidence. In many similar cases courts have upheld the submission of similar questions to the jury on evidence as weak or weaker than it was here.

In the *Geraghty* case, supra [70 F. 2d 303], decedent went between two cars just before the impact and was killed though the coupling was made. The drawbar of one was badly worn and had greater lateral play than was necessary and one witness said "he stepped between the cars 'as [if] to adjust a coupling.'" From this evidence the court held that the jury could reasonably infer that the drawbar was misaligned too far to couple had he not made the correction. This inference was neither supported by decedent's opinion except as such opinion is shown by his going in between the cars, nor the failure of the coupling

to be made, but was based on the improbability that he would go between the cars unless he thought it necessary to make the coupling.

In the *Hampton* case, supra, plaintiff was riding on the foot board of an engine to make a coupling with a car and when the couplers were about three or four feet apart he noticed that the drawbar was misaligned and therefore would not couple; that in adjusting this alignment by pushing the drawbar over with his foot it slipped and was crushed between the knuckles as the coupling was made. The court held that this opinion evidence was sufficient to sustain a judgment in his favor even though the coupling actually was made upon impact.

In the *Wagner* case, supra, a coupling of an engine with a car failed although the drawbars were properly aligned because the coupling pin on the car failed to drop. Plaintiff adjusted the pin and was standing on the engine's running board as it moved in again to make the coupling when he saw that the drawbar of the engine was away out of alignment. In adjusting this alignment by pushing on the drawbar with his foot it slipped and was crushed. The opinion does not disclose whether the coupling was made after the adjustment but the court held that the evidence was sufficient to make a case for the jury on whether it would have coupled without the adjustment.

In the *Muldowney* case, supra, Muldowney's body was found crushed between the couplers of an engine and a car. After his body was removed, another try to couple was made with both knuckles closed and without changing the alignment, and this failed. The knuckles were then opened and it was observed that the drawbar alignment of the car was away off center and when this was corrected with the knuckles opened the coupling was made. An expert testified that the presence of the body between the couplers would close the knuckles but would not change the alignment. The appellate court held that the jury could reasonably infer

that decedent saw that the alignment was so far off center that the coupling would not be made and was killed between the couplers while making the correction. Here again there was not even opinion evidence that there was a misalignment but the jury was allowed to infer that the alignment was so far off center that the coupling would not have been made from the fact that decedent went between the cars just before impact and the fact that after the cars were drawn apart and another try to couple made the drawbar of the car was found out of alignment so far that it probably would not couple and the opinion of an expert that the presence of decedent's body between the couplers would not cause the misalignment.

In all of the above cases the court held there was a jury case. In two probably three the coupling was made, in two of them the brakemen were killed and could not ever testify that there had been misalignments. In all of them the evidence of a misalignment too great to make a coupling was largely the fact that the brakeman went between the cars apparently to make an adjustment, supported in some cases by his opinion to that effect. Unless we are to disregard these cases and the general practice in courts of accepting opinion evidence and make a rule peculiar to this case, we must hold that this evidence is sufficient to go to the jury.

We also do not agree with defendant's contention that the court erroneously rejected evidence of plaintiff's negligence. By this testimony defendant offered to prove that in going between these cars while one of them was moving plaintiff knowingly violated a number of company rules and customs against which he had recently been warned, claiming that this evidence tends to show that his own negligence was the sole proximate cause of his injuries. The rejection of this evidence of rules and customs was not prejudicial error for two reasons. The first and conclusive one is that the jury's verdict indicates that they found that plaintiff's injury was proximately

caused by a defective appliance: Therefore, any negligence on the part of the plaintiff could only have been a concurring cause of his injury. And the second is that going between the cars in motion, concerning which the defendant was allowed to present evidence, is so obviously negligent anyway that the mere showing that the defendant company had a rule against it would have added nothing to the defendant's evidence of negligence on the part of the plaintiff.

It is established beyond question that where, as here, the action is brought under the Safety Appliance Act, evidence of plaintiff's contributory negligence or assumption of risk is immaterial unless it be the sole proximate cause of his injury. *Ehalt* v. *McCarthy*, 104 Utah 110, 138 P. 2d 639; *Philadelphia & R. Ry. Co.* v. *Auchenbach*, 3 Cir., 16 F. 2d 550; *San Antonio & Aransas Pass Ry. Co.* v. *Wagner*, supra. The primary question to be determined is whether defendant's violation of the act, if any, proximately caused or contributed in causing the accident. This must be ascertained by a consideration of failure of the defendant and not whether plaintiff was guilty of contributory negligence. Where the acts of the plaintiff are tied together in time, place and effect with the use of the defective appliance and neither is independent of the other, the negligence of the plaintiff can only be a concurring or contributing cause and not the sole proximate cause of the injury. *Coray* v. *Southern Pac. Co.*, 119 Utah 1, 223 P. 2d 819, and cases therein cited. In the case of *Grand Trunk Western Ry. Co.* v. *Lindsay*, 233 U. S. 42, 34 S. Ct. 581, 583, 58 L. Ed. 838, the plaintiff, a switchman, was injured when he went between two cars to remedy a coupler which had failed to couple on impact. The United States Supreme Court held that even though he gave the engineer the come-on signal, as he went between the cars

"in the view most favorable to the railroad, the case was one of concurring negligence".

If such was the effect of plaintiff's ngeligence in that case and the many other cases cited on that proposition in the *Coray* case, we cannot escape the conclusion that regardless of how flagrant plaintiff's negligence was, it would not affect his right to recover if the jury found as it did that defendant violated the Safety Appliance Act which proximately caused the injury.

The following cases sustain the rejection of evidence showing that the railroad employee violated a company rule or was otherwise negligent where his acts concurred with the use of a defective appliance: In *Philadelphia & R. Ry. Co.* v. *Auchenbach,* supra, the rejection of evidence that plaintiff violated a company rule in going in between cars to correct a defective coupler was sustained. In *Leet* v. *Union P. R. Co.,* 60 Cal. App. 2d 814, 142 P. 2d 37, the rejection of evidence that decedent violated a rule in going under a car to fix a brake which was defective under the Safety Appliance Act was sustained. In *Aly* v. *Terminal R. A. of St. L.,* 342 Mo. 1116, 119 S. W. 2d 363, rejection of evidence showing that plaintiff violated a company rule in boarding an engine moving toward him in an action under the Boiler Inspection Act, 45 U. S. C. A. § 22 et seq., was upheld. In *Jordan* v. *East St. Louis C. Ry. Co.,* 308 Mo. 31, 271 S. W. 997, plaintiff's foot was crushed in kicking a drawbar in order to align it for coupling. The appellate court sustained the trial court in rejecting evidence of a rule against kicking a drawbar. That case is exactly in point on this question. In *Chicago G. W. R. Co.* v. *Schendel,* 267 U. S. 287, 45 S. Ct. 303, 69 L. Ed. 614, deceased went between two cars to disengage a connecting chain placed there after a drawbar had been pulled out and was killed when this car ran slowly down the grade after it had been stopped to take it out of the train. The defendant contended that the effect of the defective drawbar had expended itself when the car was brought to a stop and decedent's violation of a company rule in going between the cars without advising the engineer was the sole proxi-

mate cause of his injuries. But the Supreme Court rejected this argument and sustained the trial court in allowing recovery to the plaintiff on the ground that his negligence could at most have been a cause concurring with the defective drawbar as a cause of his injury. See also *Alabama G. S. R. Co.* v. *Cornett*, 214 Ala. 23, 106 So. 242; *Smiley* v. *St. Louis-S. F. Ry. Co.*, 359 Mo. 474, 222 S. W. 2d 481; *Scrimo* v *Central R. R. of N. J.*, 2 Cir., 138 F. 2d 761; *Gulf C. & S. F. Ry. Co.* v. *Locker*, Tex. Civ. App., 264 S. W. 595; *McCarthy* v. *Pennsylvania R. Co.*, 156 F. 2d 877, certiorari denied 329 U. S. 812, 67 S. Ct. 635, 91 L. Ed. 693; *Otos* v. *Great N. Ry. Co.*, 128 Minn. 283, 150 N. W. 922; *Potter* v. *Los Angeles & S. L. R. Co.*, 42 Nev. 370, 177 P. 933.

From these cases it is clear that the violation of rules of the company and negligence on the part of the injured is immaterial in a Safety Appliance Act case unless there is a showing that such acts on the part of the injured employee were separate and independent causes of such a nature that they were efficient sole proximate causes so that the violation of the Safety Act in no way contributed to proximately cause the injury. In this case any such violation of the rules of the company as claimed could not have shown any cause of his injury separate and independent from the use of the defective appliance which the jury found existed. The court therefor did not commit any prejudicial error in rejecting that evidence.

Judgment affirmed. Costs to respondent.

McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice (dissenting).

I concur in the opinion of Mr. Justice HENRIOD for the following reason:

Admitting that only a failure to couple upon impact need be shown to establish the liability of the Railroad under

the Safety Appliance Act, I do not think the plaintiff is entitled to recover solely upon the strength of his opinion that the cars would not have coupled had he not intervened and pushed the drawbar with his foot, even though the opinion be that of a workman experienced in switching operations, there being evidence that the lateral play of the drawbars was not greater than necessary for railroad operation. Whether the cars would have coupled upon impact had the plaintiff not interceded is a question which has been by his interceding action forever relegated into the realm of conjecture and thus there is a failure of proof of this element of the plaintiff's case.

HENRIOD, Justice (concurring and dissenting).

I concur in that portion of the opinion holding no error in rejecting evidence of company rules violation, but respectfully dissent from the remainder. There appears little or nothing of consequence in this case indicating that any injury resulted from any "defect  *  *  *  due to negligence" of the defendant, or that the coupler in question would not "couple automatically upon impact". It appears undisputed that this particular coupling device was not defective, but was normal in every way, not unlike thousands of others satisfying the requirements of the Act. The drawbar of the car to which a coupling was contemplated, was in alignment. The coupling device coupled while plaintiff still was pushing it with his foot. The only evidence that it *may* not have functioned properly was the personal opinion of plaintiff himself to the effect that the bar was out of alignment so that a coupling would not result. To hold defendant tortfeasant under such circumstances seems to raise the standard of care higher than that required or contemplated by the Act, placing the employer at the mercy of an employee's possible poor judgment and ascribing to the Safety Appliance Act the insurability features of workmen's compensation legislation. Difficult it is to turn a deaf ear to an injured workman, but we must not turn a deaf ear to an employer guilty of no statutory inhibition.

A careful examination of the authorities set out in the majority opinion, it is urged, indicates that except for one case cited, but not recognized by the majority,[6] none is in point which would substantiate the thesis of the majority that the opinion of an employee as to what might or might not have happened (but didn't) is sufficient evidence to carry to the jury the question whether or not the device actually did or did not fail, would or would not have failed, or was or was not defective because of negligence in violation of the Act.

In *O'Donnell* v. *Elgin, J. & E. R. Co.*, cited by the majority with approval, an *actual broken coupler* was proved, constituting *defective* equipment—not the case here. In *Carter* v. *Atlantic R. Co.*, there was actual failure to couple, as was not the case here. The same was true in *Atlantic City Ry. Co.* v. *Parker*, in *Chi., St. P. & O. Ry. Co.* v. *Muldowney* and in *Chi. R. I. & P. R.* v. *Brown*. In *Geraghty* v. *Lehigh Valley R. Co.* the device was "badly worn", in the language of the main opinion,—obviously *defective*. In *San Antonio & A. P. R. Co.* v. *Wagner*, the court pointed out that there was evidence 1) that the coupling pin failed to drop, *and* 2) that the drawbar was out of alignment *and* 3) that there was expert testimony to the effect that the mechanism was *defective*, an aggregate of evidence appropriate for jury determination, which is absent here. The main opinion states that *Hampton* v. *Des Moines & C. I. R. Co.* held that the opinion evidence given

"was sufficient to sustain a judgment * * * even though the coupling actually was made upon impact."

This quoted statement of the majority opinion is not entirely reflective of the ratio decidendi of the *Hampton* case, since the opinion evidence there was based on the admitted factual hypothesis that the drawbar had a lateral play of

[6]*Kansas City M. & O. R. Co.* v. *Wood*, 1924, Tex. Civ. App., 262 S. W. 520.

"four or five" inches, twice that existing in the instant case, obviously abnormal and *actually defective*. It is little wonder that the court there concluded that such a drawbar "will not couple upon impact," and that it was "not such a coupler as the law required", and it is significant that the court recognized that in a case more nearly akin to the instant case, "the customary play of an inch or a little more does not interfere with their coupling upon impact." What the court *said* in the *Hampton* case, as contradistinguished with what the majority opinion said the court *held*, was that

"We think that the testimony of the plaintiff and * * * his expert that a drawbar four or five inches out of line laterally *will not couple upon impact* constituted *substantial* evidence that the coupler was *defective,* and made that question one of fact for the jury."

That was testimony of impossibility of performance, obviously in violation of the Act. In the instant case there was no testimony that would reflect any impossibility of function where a 2 inch lateral play existed. It is difficult to determine how an admittedly *defective* mechanism can be cited to analogize and predicate recovery in a case where the mechanism is shown to be perfectly normal, and where the lateral play, according to undisputed testimony, was not possibly in excess of normal,—where logic and reason would convince that the coupler being normal, normally would couple, given the opportunity. The best that can be said of plaintiff's opinion, in the light of the evidence establishing that the coupler was *not defective,* is that plaintiff may or may not have used good judgment. Everything else being normal and free from defect, it would seem incorrect to hold, as is done here, that liability can attach solely on an employee's opinion as to what *he* thinks the capabilities of a mechanism are or would be. It may well be that his own possible mistaken judgment being the only evidence, itself may lack normality, albeit the mechanism may be perfectly normal. To allow recovery in such case

seems to carry logic, reason and the law to an extreme not yet reached by the authorities, including those cited in the main opinion. It respectfully is suggested that such latter authorities stand for nothing more than the proposition stated by the prevailing opinion that *"failure of the coupler to perform properly is a violation of the Act"*,—a proposition quite foreign to the instant case, since it is predicated on *actual failure* as opposed to some sort of *conjectural failure* extant here. As a corollary to that quoted above, the main opinion goes on to say that

*"failure to couple * * * on account of a misalignment * * * is sufficient to sustain a finding of a violation of the act has been many times held by the courts [citing several cases]."*

This dissent holds no brief against either of the statements, but ventures the assertion that neither is pertinent here. They are bottomed on *actual failure,* and not, as here, upon *actual coupling,* implemented by the judgment of a person who merely *thought* there would be no coupling,—a fact made impossible of determination for lack of opportunity to demonstrate mechanical capability.

It is further suggested that the majority opinion has arrived at a false conclusion and an ipse dixit when it volunteers the statement that there was no evidence that the rocker type carrier arm always eliminates the occurrence of misalignment, or that it never occurs where the lateral movement is no greater than is required for rounding curves (a normal condition), thus implying that absent such evidence there must have been a misalignment. Quite as significant is the fact that there likewise was no evidence that such a normal rocker arm *does not* eliminate such misalignment, and there is no evidence that the lateral movement required for rounding curves (a normal condition) *does* or even *can* produce coupling failure. Such absence of evidence does not prove either alignment or misalignment, directly or by implication.

The prevailing opinion attempts to distinguish *Kansas City M. & O. Ry. Co.* v. *Wood*, which this dissent suggests is the only cited case in point, by stating minor differences in the fact situation. It overlooks the fact that the court was confronted with and made its decision solely on consideration of the opinion evidence, as must be done here. This is apparent from the court's unequivocal statement that there is

"nothing to support plaintiff's contention save his own observations and opinion as to *what would have happened* had he not gone between the cars. This, we think, is leaving the domain of fact and invading the realm of fancy, and is too meager to sustain a recovery against appellant." [262 S. W. 523].

The same conclusion is inescapable in the instant case, and no amount of distinction between the facts there and here can justify a difference in result, since the opinion evidence in both cases is the sine qua non of the conclusion.

It is urged that the majority opinion attempts to apply analogy where analogy is absent, to assign as precedents for its conclusion authorities which have no application in fact or principle, not warranting an affirmance of the judgment below.